[Cite as *Boston v. A & B Sales, Inc.*, 2011-Ohio-6427.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| DEANNA BOSTON, et al., | ) | |
| | ) | CASE NO. 11 BE 2 |
| PLAINTIFFS-APPELLANTS, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| A & B SALES, INC., | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:          Civil Appeal from Common Pleas
                                                                   Court, Case No. 09 CV 0210.


JUDGMENT:                                          Reversed and Remanded.


APPEARANCES:
For Plaintiffs-Appellants:                    Attorney Gary M. Stern
                                                                  106 South Fourth Street
                                                                  Steubenville, OH  54352



For Defendant-Appellee:                     Attorney Ronald Gregory
                                                                  Attorney Jeffrey T. Peters
                                                                  5005 Rockside Road, Suite 600
                                                                  Independence, OH  44131



JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich


                                                                  Dated:  December 7, 2011

DeGenaro, J.

{¶1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiffs-Appellants, Deanna Boston, et al., appeal the decision of the Belmont County Court of Common Pleas granting summary judgment in favor of A&B Sales, Inc. in a slip and fall negligence action. On appeal, Boston argues that summary judgment was improper because a genuine issue of material fact existed as to whether the water she fell upon was an open and obvious condition and whether attendant circumstances prevented her from discovering the hazard. She contends that the trial court erred in construing the evidence against her in granting summary judgment in favor of A&B Sales.

{¶2} Upon review, we conclude that Boston's assignment of error is meritorious. Boston's testimony is ambiguous as to whether she actually saw the water before she fell. Boston could have anticipated that water from a car wash that accumulated in a puddle in front of an entrance could be tracked inside by other customers. However, evidence in the record of poor lighting conditions creates a genuine issue of material fact as to whether these attendant circumstances would prevent the discovery of the hazardous condition. Accordingly, we reverse the judgment of the trial court and remand this case for further proceedings.

### Facts and Procedural History

{¶3} On May 4, 2009, Deanna and Starling Boston filed a complaint in the Belmont County Court of Common Pleas against A&B Sales. Boston alleged that on August 9, 2007, while on the business premises she fell due to a hazardous condition created by A&B Sales' negligence. She asserted that this condition was not open and obvious and that A&B Sales had negligently failed to correct and warn against the condition. She claimed that she sustained serious injuries as a direct and proximate result of this negligence. On June 5, 2009, A&B Sales filed an answer asserting affirmative defenses, inter alia, that Boston's claim is barred because the danger was open and obvious.

{¶4} On April 14, 2010, A&B Sales filed Boston's deposition and a motion for summary judgment. It claimed that the water Boston slipped upon was an open and

obvious condition; thus, it had no duty to warn her of the danger. It noted that Boston testified that she saw and felt the water before she fell. It argued that whether a condition is open and obvious relates to duty, which is a question of law for the court to decide. It also contended that Boston's testimony established that she had actual knowledge and familiarity with A&B Sales' premises. It thus urged the court to grant summary judgment in its favor.

**{¶5}** In her deposition, Boston testified that she had purchased this and another vehicle from A&B Sales; and that between purchasing the vehicle in February, 2007 and the incident in August, 2007, she had been to the service area of the dealership approximately twice, entering through the service entrance in the rear of the building.

**{¶6}** As she pulled into A&B Sales on the day of the incident, she saw employees washing vehicles in the washing bay and there was "water everywhere." She explained that since the washing bay is located beside the service area door, water runs out of the bay and past the door. She stated that the bay area was all wet and there was a puddle of water in front of the door. She testified that the puddle was not so large that she could not step around or over it, but then agreed that the only way to get into the doorway was to walk through the water. She also stated that she was wearing flip-flops.

**{¶7}** Boston agreed that the service area door was a regular door. She testified that she opened the door and stepped into the inside of the service area. She explained that she took three or four steps inside before she fell, injuring her right knee and left ankle. She did not notice any slippage before she fell but agreed that she knew her feet were wet. She also agreed that the floor is made of concrete. She stated that she had never had a problem with slipping before when wearing those flip-flops and walking through water. She also testified that she had not experienced slipping before when walking on a smooth concrete floor with wet feet.

**{¶8}** The following exchange then occurred between counsel and Boston:

**{¶9}** "Q. And I have to ask it this way. When you walked into the building you knew you had water on the bottom of your feet – or the bottom of your sandals, correct?

**{¶10}** "A. Correct.

**{¶11}** "Q. Do you think that if you would have exercised a little more care that you would have not fallen?

**{¶12}** "A. I thought I was doing, you know – I had no reason why that I thought I would fall, you know, because, I mean, I walked through the water and going through that little hallway or whatever you want to call it and, I mean, I just didn't do it on purpose. I mean, I just fell.

**{¶13}** "Q. * * * Now there was no – you know, the water was there and was obvious to you, correct?

**{¶14}** "A. Right."

**{¶15}** Boston testified that after she fell, a lady named Sharon Bohn who was walking behind her helped her up. Boston did not know if Bohn was inside the door when she fell or if Bohn came in afterwards. Boston stated that she has not spoken with Bohn since the incident. She also explained that after she fell, the dealership's maintenance came and wiped the floor and put out a rubber mat and caution signs. She further explained that the manager talked with her about what happened and he wrote an incident report, which she signed.

**{¶16}** On July 1, 2010, Boston opposed A&B Sales' motion for summary judgment, asserting that A&B Sales was not entitled to summary judgment because it failed to show an absence of a genuine issue of material fact as to whether her fall was caused by an open and obvious danger. Specifically, she contended that while the water outside the service entrance was open and obvious, there is no evidence that the condition inside the building where she fell was open or obvious, a conclusion which is supported by eyewitness testimony that anyone coming from outside daylight into the dimly lit hallway could not see the water until you stepped on it. Further, she claimed that whether a hazardous condition is open and obvious depends on the facts of the case.

**{¶17}** In support, Boston attached the affidavit of the eyewitness, Sharon Bohn. Bohn stated that in August of 2007, she was on A&B Sales' premises for an oil change. She did not know Boston and has not talked to her since that day. As Bohn was walking towards the service door, Boston was entering the door in front of her. Bohn claimed that

Boston was walking at a normal pace and as soon as Boston went through the door and stepped into the hallway, she slipped and fell. Bohn could see that there was water on the ground outside the door that came from the car wash area, but she stated that there was no way to know that the hallway inside the service door was also covered with water. She further explained that, "[w]e were going from bright daylight into a dim hallway, and you couldn't see the water inside until you actually stepped on it." Finally, she concluded: "There was no carpet or mat in the hallway, and the water made the surface extremely slippery, but there was no way to know this beforehand. I feel this was an unreasonably dangerous condition that was not visible to Ms. Boston or to me and could not have been anticipated."

{¶18} On July 8, 2010, A&B Sales filed a reply brief, claiming that Boston was attempting to introduce an affidavit that contradicted her own deposition testimony. It continued to argue that Boston admitted that she saw the water before she fell; thus, the water was an open and obvious condition. On December 14, 2010, the court filed a journal entry sustaining A&B Sales' motion for summary judgment and dismissing the case with prejudice as to re-filing. The court found in pertinent part:

{¶19} "Plaintiff has failed to establish the existence of of [sic] material facts upon which reasonable minds may disagree in regard to the issue of whether the water on the floor in the entrance way to Defendant's place of business was an open and obvious condition easily observable by Plaintiff at the time of her slip and fall.

{¶20} "The Court specifically finds, based upon the facts submitted, that irrespective of the lay opinion of Plaintiff's independent witness, Plaintiff admitted that the water into which she stepped before falling was open and obvious. Therefore, when Plaintiff was injured by such an open and obvious danger, Summary Judgment is appropriate because the duty of care (to warn of hazard) does not exist as a matter of law. Therefore, Defendant is entitled to Judgment as a matter of law. The Court finds that reasonable minds can come to but one conclusion, and that conclusion is adverse to Plaintiff, said Plaintiff having been entitled to have the evidence construed most strongly in Plaintiff's favor."

**Open and Obvious**

**{¶21}** Boston asserts in her sole assignment of error:

**{¶22}** "The trial court erred in granting summary judgment in favor of defendant."

**{¶23}** When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court and, therefore, engages in de novo review. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121. Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the nonmovant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243. A fact is material when it affects the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App.3d 301, 304, 733 N.E.2d 1186.

**{¶24}** When moving for summary judgment, a party must produce some facts that suggest a reasonable fact-finder could rule in her favor. *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378, 386, 701 N.E.2d 1023. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. The trial court's decision must be based upon "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." Id., citing Civ.R. 56(C). The nonmoving party has the reciprocal burden of specificity and cannot rest on the mere allegations or denials in the pleadings. Id. at 293.

**{¶25}** For Boston to sustain a claim of negligence she must show: a duty owed by the defendant to the plaintiff, a breach of that duty, injury or damages, and the existence of proximate cause between the breach and the injury or damages. *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 472 N.E.2d 707. The existence of a duty is a question of law. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d

265.

{¶26} Boston was on A&B Sales' premises as a business invitee. "Business invitees are persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner." *Light v. Ohio University* (1986), 28 Ohio St.3d 66, 68, 502 N.E.2d 611. An owner or occupier of a business owes its invitees a duty of ordinary care in maintaining the premises in a "reasonably safe condition" so that its customers are not exposed to danger, *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 203, 480 N.E.2d 474, and has the duty to warn its invitees of latent or hidden dangers. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at ¶5. Storeowners, however, are not insurers against all accidents and injuries to their business invitees. *Paschal* at 203. An owner's duty to warn its invitees of latent or hidden dangers only extends to conditions which the invitee, by the exercise of ordinary care, would not be expected to discover for himself. An owner is under no duty to protect a business invitee from dangers that are known to such invitee or are so obvious and apparent that he may be reasonably expected to discover them and protect himself against them. Id. at 203-204.

{¶27} Thus, "[w]here the danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Armstrong*, supra, at ¶14. "[T]he open-and-obvious doctrine is not concerned with causation but rather stems from the landowner's duty to persons injured on his or her property." Id. at ¶11. Put another way, "whether a defendant created the dangerous condition becomes a relevant question only if a plaintiff demonstrates that the defendant owed the plaintiff a duty of care." *Ray v. Wal-Mart Stores, Inc.*, 4th Dist. No. 08CA41, 2009-Ohio-4542, at ¶21.

{¶28} The rationale behind this rule is that "the open and obvious nature of the hazard itself serves as a warning." Id. at ¶5. Open and obvious hazards are neither hidden from view nor concealed and are discoverable by ordinary inspection. *Parsons v. Lawson Co.* (1989), 57 Ohio App.3d 49, 50-51, 566 N.E.2d 698. "[T]he dangerous condition at issue does not actually have to be observed by the plaintiff * * * to be an 'open and obvious' condition under the law. Rather, the determinative issue is whether

the condition is observable." *Lydic v. Lowe's Cos., Inc.*, 10th Dist. No. 01AP-1432, 2002-Ohio-5001, at ¶10.

**{¶29}** However, the open and obvious rule does not apply if attendant circumstances prevent the invitee from discovering the otherwise open and obvious danger. *Zuzan v. Shutrump*, 155 Ohio App.3d 589, 802 N.E.2d 683, 2003-Ohio-7285, at ¶15. An attendant circumstance includes any distraction that would come to the attention of a pedestrian in the same circumstances and reduce the degree of care an ordinary person would exercise at the time. *Godwin v. Erb*, 167 Ohio App.3d 645, 856 N.E.2d 321, 2006-Ohio-3638, at ¶36. In order to impose liability, "[t]he attendant circumstances must, taken together, divert the attention of the pedestrian, significantly enhance the danger of the defect, and contribute to the fall." *McGuire v. Sears, Roebuck & Co.* (1996), 118 Ohio App.3d 494, 499, 693 N.E.2d 807.

**{¶30}** The parties disagree as to whether the determination of a danger as open and obvious is a question of law for the court to decide or a question of fact for the jury. Boston contends that "whether a particular danger is open and obvious depends heavily on the particular facts of the case. While it is true that the question of whether a duty to warn exists is one of law for courts to answer, it is no less true that '[w]hether a given hazard is open-and-obvious * * * may involve a genuine issue of material fact, which a trier of fact must resolve.'" *Hissong v. Miller*, 186 Ohio App.3d 345, 2010-Ohio-961, 927 N.E.2d 1161, at ¶13. Conversely, A&B Sales asserts that "the *Armstrong* [see supra] court confirmed that whether a condition is open and obvious is one of duty, which is a question of law for the court to decide. Therefore, the issue is appropriately decided on summary judgment." A&B Sales further argues that many districts, including this court, have held that the existence of a duty to protect against open and obvious dangers is a question of law.

**{¶31}** A&B Sales is correct that this court has affirmed summary judgment because it found that a danger was open and obvious as a matter of law. While this court has characterized the issue of whether a condition is open and obvious as "a matter of law to be determined by the court," *Venable v. Greater Friendship Baptist Church*, 7th

Dist. No. 09 MA 79, 2010-Ohio-3159, at ¶16, it has also found that reasonable minds can differ over whether a hazard is open and obvious, thus concluding that the trial court's finding of summary judgment was inappropriate. *Kraft v. Dolgencorp., Inc.*, 7th Dist. No. 06 MA 69, 2007-Ohio-4997, at ¶38.

{¶32} In *Klauss v. Glassman*, 8th Dist. No. 84799, 2005-Ohio-1306, the Eighth District considered this issue in greater detail:

{¶33} "Although the Supreme Court of Ohio has held that whether a duty exists is a question of law for the court to decide, the issue of whether a hazardous condition is open and obvious may present a genuine issue of fact for a jury to review.

{¶34} "Where only one conclusion can be drawn from the established facts, the issue of whether a risk was open and obvious may be decided by the court as a matter of law. *Anderson v. Hedstrom Corp.* (S.D.N.Y.1999), 76 F.Supp.2d 422, 441; *Vella v. Hyatt Corp.* (S.D. MI 2001), 166 F.Supp.2d 1193, 1198; see, also, *Parsons v. Lawson Co.* (1989), 57 Ohio App.3d 49, 566 N.E.2d 698. However, where reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine. *Carpenter v. Marc Glassman, Inc.* (1997), 124 Ohio App.3d 236, 240, 705 N.E.2d 1281; *Henry v. Dollar General Store,* Greene App. No.2002-CA-47, 2003-Ohio-206; *Bumgarner v. Wal-Mart Stores, Inc.,* Miami App. No.2002-CA-11, 2002-Ohio-6856.

{¶35} "As stated in *Henry,* supra: 'We agree that the existence of a duty is a question of law for the court to decide. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265. As a result, whether a business owner owes a duty of care to protect customers against an open and obvious danger is for a court, not a jury, to resolve. Whether a given hazard is open and obvious, however, may involve a genuine issue of material fact, which a trier of fact must resolve.'" Id. at ¶17-19. See, also, *Schmitt v. Duke Realty, LP*, 10th Dist. No. 04AP-251, 2005-Ohio-4245, at ¶12-17.

{¶36} Thus, we may determine that the hazard was open and obvious as a matter of law and that this issue was appropriately decided on summary judgment. However, if we determine that genuine issues of material fact exist as to whether the hazard was

open and obvious, then we may find that the issue is a question of fact for the jury in agreement with *Klauss* and *Schmitt.*

**{¶37}** Boston asserts that the trial court improperly construed the evidence against her in granting A&B Sales summary judgment . Specifically, she claims that a question of material fact exists as to whether the water on the floor inside the doorway was an open and obvious hazard. She contends that her admission that the water was obvious did not specify whether she was referring to the water outside the door in the parking lot or to the water inside the door in the area that she fell. She also argues that the water in the hallway was not observable because of the lighting conditions, which is essentially an argument that the water was not open and obvious due to attendant circumstances. Thus, we must first determine whether the hazard was open and obvious; and second whether there is a genuine issue of material fact as to whether attendant circumstances prevented discovery of the hazard.

**{¶38}** The trial court concluded that the hazard was open and obvious. It found that Boston testified that she knew there was water on the floor after she went through the service door, that she knew her feet and flip-flops were wet, and that she knew the water was there and the water was obvious to her.

**{¶39}** Upon review of the record, Boston clearly testified that she saw cars being washed as she pulled into the parking lot and saw water everywhere in the lot, including a puddle in front of the door to the service area. However, she did not specifically testify that she saw the water inside the door before she fell. She did testify that as she was walking inside the service area, she knew that her feet were wet and that she had water on the bottom of her sandals, but she had also testified that she had to walk through the puddle of water in front of the service door. She also explained that, "as I was going through the door there was water and I had slipped and fell." This testimony does not specify if she saw the water inside the door before or after she fell.

**{¶40}** A&B Sales argues that Boston testified that she saw "obvious" water "everywhere." However, she testified that she saw water everywhere as she was pulling into the parking lot, not when she was inside. Counsel asked her, "Now, there was no –

you know, the water was there and was obvious to you, correct?" and Boston replied, "Right." This question followed an exchange regarding her fall inside the building, so one could assume that she was referring to the water that caused her fall. However, Boston is correct that neither she nor counsel specified the water to which this question referred. Since we must view the evidence in the nonmovant's favor, Boston's testimony is ambiguous as to whether she was actually aware of the water inside the door.

{¶41} Regardless of whether Boston actually saw the water inside the hallway before she fell, the condition can still be open and obvious as a matter of law if the hazard was observable. *Lydic*, supra, at ¶10. "As to the problem of tracked-in water, ordinarily there is no liability for slippery floors created by this condition. It is a condition created by inclement weather and everyone should be aware of the conditions. Thus, Ohio courts have held that stores and other places of business are generally not liable for injuries suffered by a patron who falls on water tracked into the premises by other patrons. *Boles v. Montgomery Ward & Co.* (1950), 153 Ohio St. 381; *S.S. Kresge Co. v. Fader* (1927), 116 Ohio St. 718; *Rayburn v. J.C. Penney Outlet Store* (1982), 3 Ohio App.3d 463." *Flowers v. Kroger Co.* (June 29, 1988), 7th Dist. No. 87-C-26.

{¶42} For example, in *Johnson v. Service Center Investment Trust, Inc.* (Dec. 2, 1999), 8th Dist. No. 75256, the plaintiff slipped and fell on tracked-in rainwater after taking two or three steps inside a mall. She testified that it had been raining for an hour prior to her arrival at the mall, that she noticed her dress and coat were wet after falling, and she concluded that the water was tracked in by other patrons. Id. at 2. The Eighth District held that the defendant did not have a duty to remove the water or warn her of the hazard, explaining that "the weather conditions as described by [the plaintiff] suggest that as an invitee, she should have been aware or anticipated the presence of water on the floor inside the mall because on a rainy day, one can expect to find water on the floor in such heavily trafficked areas." Id. at 2-3.

{¶43} In *Schmitt*, supra, the plaintiff slipped and fell on an accumulation of tracked-in water after taking 15 to 20 steps inside the building. It had rained earlier in the day before the plaintiff arrived at the building, and she observed puddles of water in the

parking lot surrounding the entrance. Id. at ¶2. The Tenth District held that a genuine issue of material fact existed as to whether the hazard was open and obvious and reversed the trial court's award of summary judgment. Id. at ¶19. However, the court reasoned that "the mere fact that rain left the parking lot wet cannot make every puddle of water in the building into an open and obvious hazard. Had the water in this case been *only a few steps inside the door of the building*, we would agree with the trial court that the water, as a matter of law, was an open and obvious hazard; reasonable minds could not differ about whether someone entering the building should be charged with the knowledge that the floor might be wet." Id. at ¶18 (emphasis added).

{¶44} Because *Johnson* and *Schmitt* concern tracked-in rainwater, they are instructive here. The plaintiffs in those cases were aware of the weather conditions and in *Schmitt*, as in this case, the plaintiff admitted seeing puddles of water near the entrance. Boston was aware that employees were washing vehicles in an area beside the service entrance and that water was everywhere, including a puddle right in front of the door. While there was no direct testimony that other patrons tracked this water into the building, Boston herself testified that the bottom of her shoes were wet as she entered the building. Further, there is no evidence that the water came from any source other than the carwash water outside, and Boston does not claim that the water originated from another source. However, the situation presented here is more akin to *Johnson* than to *Schmitt*. Similar to the plaintiff in *Johnson* who fell after taking two or three steps, Boston fell after taking three or four steps inside the building. As a person entering a building on an inclement day could anticipate the presence of water on the floor inside the door, a patron could similarly anticipate that water from a car wash accumulating in front of the entrance could be tracked inside in the same way as rainwater. Thus, the water Boston slipped upon was an open and obvious hazard. However, we must next determine whether attendant circumstances prevented Boston from discovering the otherwise open and obvious danger.

{¶45} Boston argues that the trial court improperly dismissed the eyewitness' affidavit. After summarizing the evidence from Boston's deposition, the trial court found

that:

**{¶46}** "The above-stated admissions of Plaintiff controvert the testimony presented in the Affidavit of Plaintiff's independent witness, who, rather than testifying as to the facts presented in Plaintiff's Deposition testimony, instead expressed her lay opinion that there was no way for Plaintiff to know that the hallway on the other side of the door was also covered with water. Obviously, Plaintiff saw the water and, perhaps, felt the water on her feet since she was wearing flip-flops. Although Sharon Bohn claimed that one couldn't see the water inside the entranceway until one actually stepped in it, Plaintiff admitted that she saw the water and that she knew her flip-flops were wet, while she was taking three or four steps into the service department entranceway immediately preceding her fall.  * * * Plaintiff has attempted to suggest that, though she knew of the fact that the water was everywhere outside the door, she did not specifically know of the water in the doorway. In support [sic] that position, Plaintiff has submitted the Affidavit of an 'eye-witness'  However, the introduction of the testimony contained in the Affidavit contradicts Plaintiff's own Deposition testimony, wherein Plaintiff affirms her awareness of the presence of water before and at the time of her fall and when she concludes that the existence of the water was obvious."

**{¶47}** Because Boston's testimony regarding whether she actually saw the water inside the door before she fell was ambiguous, Bohn's affidavit does not directly contradict Boston's testimony. Bohn stated in her affidavit that because she and Boston were going from bright light outside into a dim hallway, there was no way to see the water inside until you stepped upon it. Boston did not testify regarding whether the light was dim or whether the lighting contributed to her fall.

**{¶48}** This court has noted that lighting conditions can be an attendant circumstance, explaining that "lack of lighting could dramatically hinder a person's ability to protect themselves against open and obvious dangers in a crosswalk or sidewalk." *Smith v. Gracon*, 7th Dist. No. 05 MA 125, 2006-Ohio-886, at ¶16, 18. Here, the lighting conditions create a genuine issue of material fact as to whether the water was open and obvious. Construing the affidavit most strongly in Boston's favor, the poor lighting could

hinder a person's ability to protect themselves against a puddle of water on the floor. If Boston's eyes were adjusting to the bright sunlight, that may have prevented her from observing the water, thereby significantly enhancing the danger of slipping and contributing to her fall.

{¶49} This conclusion is supported by the decision in *Louderback v. McDonald's Restaurant*, 4th Dist. No. 04CA2981, 2005-Ohio-3926, where the plaintiff slipped on water immediately after stepping from the breezeway through a door into the main section of the restaurant. The plaintiff explained that his eyes were adjusting to the brightness of the sun and he could not see into the restaurant as he stepped inside. He further explained that after he fell, he noticed an employee mopping the floor. Id. at ¶7. The Fourth District reversed summary judgment, holding in part that genuine issues of material fact existed regarding whether the condition was open and obvious. Id. at ¶22. "Appellant testified in his deposition that he did not notice the wet condition of the floor (immediately behind the entrance way door) before stepping onto it because his eyes were adjusting from the brightness of the sun, which made it difficult to see indoors, and because the wet floor was immediate upon entering the restaurant. Appellant had no warning that the floor was wet and he did not have sufficient time to perceive any hazard. If the factfinder believes the foregoing facts, then the hazard was not open and obvious." Id. at ¶23.

{¶50} This case differs from *Louderback* in that the puddle outside the door gave Boston some advance warning that there could be water tracked inside, and Boston testified that she took three or four steps before falling rather than falling immediately inside the door like the plaintiff in *Louderback*. However, the reasoning of the attendant circumstance of poor lighting preventing a plaintiff from observing the hazard still applies. Like *Louderback*, here Bohn's affidavit that her eyes had to adjust from daylight to the dim light in the hallway is evidence that suggests that perhaps Boston's eyes were similarly adjusting to the change in lighting, and as a result, was hindered from appreciating the danger of the water. Thus, a question of fact exists as to whether the bright sunlight and dim hallway distracted Boston from observing the hazard.

**{¶51}** Finally, A&B Sales argues that Boston had actual knowledge and familiarity with its premises, which militates against any duty owed to her. This court has previously recognized that "knowledge may be shown by prior usage." *Zuzan v. Shutrump*, 155 Ohio App.3d 589, 2003-Ohio-7285, 802 N.E.2d 683, at ¶12. A&B Sales claims that the evidence establishes that Boston had actual knowledge of its premises because she had been there several times before her fall. Boston did testify that she had been to the service area of the dealership "maybe twice" in the year her fall occurred and she had entered through the service door. However, she did not testify that employees were washing vehicles during these prior visits nor did she testify the parking lot was wet. Therefore, the record does not reveal whether Boston had knowledge of the premises in the condition she encountered when she fell.

**{¶52}** In conclusion, Boston's assignment of error is meritorious. Boston's testimony is ambiguous as to whether she actually saw the water before she fell. Although Boston could have anticipated that water from a car wash that accumulated in a puddle in front of an entrance could be tracked inside by other customers, the evidence of poor lighting creates a genuine issue of material fact as to whether the hazard was open and obvious. Accordingly, the judgment of the trial court is reversed and this case is remanded for further proceedings.

Donofrio, J., concurs.

Vukovich, J., concurs.