[Cite as *Roberts v. United Dairy Farmers, Inc.*, 2014-Ohio-3881.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| JOANN ROBERTS, | : | CASE NO. CA2014-03-066 |
| Plaintiff-Appellant, | : | |
| | : | O P I N I O N<br>9/8/2014 |
| - vs - | : | |
| | : | |
| UNITED DAIRY FARMERS, INC., | : | |
| Defendant-Appellee. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2012-10-3762

O'Connor, Acciani & Levy LPA, Elizabeth L. Acciani, 2200 Kroger Building, 1014 Vine Street, Cincinnati, Ohio 45202, for plaintiff-appellant

Stuart J. Goldberg and Jeffrey M. Stopar, One Sea Gate, 24th Floor, P.O. Box 10032, Toledo, Ohio 43699-0032, for defendant-appellee

**M. POWELL, J.**

{¶ 1} Plaintiff-appellant, Joann Roberts, appeals the decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendant-appellee, United Dairy Farmers, Inc. (UDF). For the reasons detailed below, we affirm the decision of the trial court.

{¶ 2} On August 18, 2011, appellant fell on the premises of a Butler County, Ohio

UDF gas station and convenience store. As a result of her fall, appellant sustained two fractures in her foot and another fracture in her elbow. Appellant subsequently filed this premises liability action against UDF. The parties engaged in discovery, which included the depositions of appellant and two UDF employees.

{¶ 3} In her deposition, appellant acknowledged that she had been to that particular UDF store on a number of prior occasions. Appellant testified that on the date she fell she went to UDF in order to purchase gasoline. Appellant parked her vehicle next to a gas pump and began fueling. After she finished fueling her vehicle, appellant went to pay for the gasoline and walked across the parking lot, onto the sidewalk, and entered the UDF storefront through a set of double doors. Following payment, appellant then walked through the same set of double doors and traversed the same sidewalk to return to her vehicle. However, as she was taking her last step on the sidewalk, appellant's foot caught in a hole in the sidewalk causing her to fall. Although appellant testified that she did not notice the hole prior to the accident, she described the hole as a "good size hole," approximately 6" x 6" wide and 3" deep.

{¶ 4} Following discovery, UDF moved for summary judgment on the basis that the hole in the sidewalk was an open and obvious condition. Appellant filed a memorandum in opposition. In a written opinion, the trial court granted UDF's motion for summary judgment finding that the hole was open and obvious and there were no attendant circumstances. Appellant now appeals, raising a single assignment of error for review:

{¶ 5} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE.

{¶ 6} In her sole assignment of error, appellant argues the trial court erred in granting summary judgment in favor of UDF. In so doing, appellant alleges: (1) the hole was not open and obvious; and (2) there were attendant circumstances present at the time of the accident.

- 2 -

We find no merit to appellant's arguments.

{¶ 7} Summary judgment is a procedural device used to terminate litigation and avoid a formal trial where a case presents no triable issues. *Simmons v. Yingling*, 12th Dist. Warren No. CA2010-11-117, 2011-Ohio-4041, ¶ 19. Pursuant to Civ.R. 56, summary judgment is appropriate when "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." *Whitaker v. Advantage RN, L.L.C.*, 12th Dist. Butler No. CA2012-04-082, 2012-Ohio-5959, ¶ 16, quoting *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 368 (1998). An appellate court's review of a summary judgment decision is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶ 8} In order to avoid summary judgment in a negligence action, the plaintiff must show the following: (1) the defendant owed plaintiff a duty of care, (2) the defendant breached the duty of care, and (3) as a direct and proximate result of defendant's breach, plaintiff was injured. *Forste v. Oakview Constr., Inc.*, 12th Dist. Warren No. CA2009-05-054, 2009-Ohio-5516, ¶ 9.

{¶ 9} Neither party disputes that appellant was a business invitee at the time of the accident. As a property owner, UDF has "a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent and hidden dangers." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 5. Premises owners, however, are not insurers against all accidents and injuries to their business invitees. *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 204 (1985). Specifically, a property owner or occupier "has no duty to warn against hazards which are known or open and obvious; an invitee is reasonably expected to discover and guard against

such dangers." *Moody v. Pilot Travel Ctrs., L.L.C.*, 12th Dist. Butler No. CA2011-07-141, 2012-Ohio-1478, ¶ 9. The rationale behind this doctrine is that "the open and obvious nature of the hazard itself serves as a warning." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644 (1992).

{¶ 10} In deciding whether a condition is open and obvious, "the determinative question is whether the condition is discoverable or discernible by one who is acting with ordinary care under the circumstances." *Williamson v. Geeting*, 12th Dist. Preble No. CA2011-09-011, 2012-Ohio-2849, ¶ 18. This determination is an objective one and "a dangerous condition does not actually have to be observed by the claimant to be an open and obvious condition under the law." *Gentry v. Collins*, 12th Dist. Warren No. CA2012-06-048, 2013-Ohio-63, ¶ 21. Rather the determinative issue is "whether the condition is observable." *McQueen v. Kings Island*, 12th Dist. Warren No. CA2011-11-117, 2012-Ohio-3539, ¶ 25; *Snyder v. Kings Sleep Shop, L.L.C.*, 6th Dist. Williams No. WM-13-006, 2014-Ohio-1003, ¶ 21 ("Recovery for objectively observable conditions is barred").

{¶ 11} In the present case, the trial court granted summary judgment to UDF after concluding that the approximate 6" x 6" wide and 3" deep hole was an open and obvious condition, which abrogated any duty owed to appellant. Appellant disputes this conclusion and argues that she was unable to observe the hole until after she had already fallen because it "blended in with the rest of the concrete." Furthermore, appellant also emphasizes the testimony of Chrissy Payne and Brittany Rhodes, the two UDF employees working at the time of the accident. Both Payne and Rhodes testified that they had not previously noticed the hole in the sidewalk in their many years of employment at that location. Based on that testimony, appellant argues that there is a genuine issue of material fact as to whether the hole was an open and obvious condition. Specifically, appellant points out "[h]ow can a condition which is so 'open and obvious' escape the recognition of two persons

who have traversed the area several hundred times?"

{¶ 12} Based on our review of the evidence, we find the trial court did not err in determining that the hole was an open and obvious condition. In the present case, appellant tripped in a hole approximately 6" x 6" wide and 3" deep in the sidewalk while exiting the UDF store. Appellant had previously traversed the same general area to enter the store and acknowledged that she had been to the store on multiple occasions over the years. Appellant testified that nothing obstructed her view of the sidewalk. Following appellant's fall, UDF employee Payne testified that she observed the defect in the concrete and took photographs of the surrounding area. Photographs of the defect are contained in the record and clearly indicate that the condition was observable by anyone acting with ordinary care under the circumstances. In fact, this point was admitted by appellant during her deposition when she acknowledged:

> Q. And since you can see it [the hole] in all of these pictures we talked about in five and six and the ones from a little bit farther distance in the dark, it's fair to say that had you been looking in the direction of that area of the sidewalk you could have seen it?
>
> A. Yes.

Accordingly, we concur with the conclusion of the trial court that the hole in the sidewalk was an open and obvious condition.

{¶ 13} Furthermore, we disagree with appellant's contention that the testimony presented by Payne and Rhodes creates a genuine issue of material fact regarding the open and obvious nature of the hole. As previously noted, both Payne and Rhodes stated in their depositions that they were not aware of the hole at issue in the present case until after the accident. However, this court has previously rejected a similar argument in *McQueen v. Kings Island*, 12th Dist. Warren No. CA2011-11-117, 2012-Ohio-3539. In *McQueen*, this court found that similar testimony that an employee failed to observe a defect in pavement,

despite the condition being open and obvious, did not "vitiate the open and obvious nature of the defect" or necessarily create a genuine issue of material fact. Rather, we again noted that the determinative issue is "whether the condition is observable." *Id.* at ¶ 25; *see also Smith v. Kroger, Co.*, 12th Dist. Butler No. CA2010-09-233, 2011-Ohio-1871, ¶ 18-19 (a puddle of water located in the aisle of a supermarket was an open and obvious condition based on the observability of the defective condition and the claimant's own testimony that he could observe the condition following his fall).

{¶ 14} Moreover, as noted by Payne's testimony, the failure to observe the defect could have been for a variety of reasons. In fact, when specifically asked why she failed to observe the hole, Payne stated:

> Q. Okay. Let me ask you this question because you're very familiar previously with this area and having worked here for a long time. Are you able to tell me why it is that you didn't notice this hole or this defect in the concrete even though you had walked in this general area probably hundreds of times in the year or so before this happened?
>
> A. Because there's a lot of imperfections. I mean, because it's not straight concrete so I never really paid much attention to that there was an imperfection there.

Accordingly, after reviewing the testimony provided and the photographs of the defect in the sidewalk, we find the trial court did not err in determining that the hole was an open and obvious condition.

{¶ 15} Nevertheless, appellant maintains that even if the hole was open and obvious, her claim is still compensable based on the existence of attendant circumstances, which diverted her attention from the sidewalk. Specifically, appellant maintains that she was looking out into the parking lot at the time of the fall because of the presence of traffic in the UDF parking lot.

{¶ 16} Attendant circumstances are an exception to the open and obvious doctrine

and refer to distractions that contribute to an injury by diverting the attention of the injured party and reduce the degree of care an ordinary person would exercise at the time. *Galinari v. Michael Koop*, 12th Dist. Clermont No. CA2006-10-086, 2007-Ohio-4540, ¶ 21. The phrase "attendant circumstances" refers to all facts relating to the event and have included such circumstances as the time of day, lack of familiarity with the route taken, and lighting conditions. *Id.* An attendant circumstance must divert the attention of the injured party, significantly enhance the danger of the defect, and contribute to the injury. *Id*; *McQueen*, 2012-Ohio-3539 at ¶ 13. Attendant circumstances do not, however, encompass the common or ordinary. *Isaacs v. Meijer, Inc.*, 12th Dist. Clermont No. CA2005-10-098, 2006-Ohio-1439, ¶ 16.

{¶ 17} Based on our review of the record, we find the trial court did not err in concluding that no attendant circumstances existed at the time of appellant's accident. Appellant does not describe a situation where an ordinary person would be distracted from seeing a hole in the sidewalk on the way to her car. *E.g., Cooper v. Meijer Stores Ltd. Partnership*, 10th Dist. Franklin No. 07AP-201, 2007-Ohio-6086 (finding that vehicular and pedestrian traffic in a parking lot was not an attendant circumstance). "Vehicles and other pedestrians are commonplace in a store parking lot. Without more, they do not create a distraction, or attendant circumstance that would reduce the degree of care an ordinary person would exercise." *Bounds v. Marc Glassman, Inc.*, 8th Dist. Cuyahoga No. 90610, 2008-Ohio-5989, ¶ 25; *see also Forste*, 2009-Ohio-5516 at ¶ 22. Thus, reasonable minds could come to but one conclusion and that conclusion is adverse to appellant on the issue of whether attendant circumstances avoided the open and obvious doctrine.

{¶ 18} Accordingly, the trial court properly granted summary judgment in favor of UDF. Appellant's sole assignment of error is overruled.

{¶ 19} Judgment affirmed.

HENDRICKSON, P.J., concurs.

PIPER, J., dissents.

**PIPER, J., dissenting.**

{¶ 20} Reasonable minds could differ as to whether, under the circumstances, the deteriorating concrete concealed or hid the hazard presented to appellant immediately prior to her fall. The defective condition of the concrete created a slight hole with little, if any, color contrast and was not as a matter of law a "condition itself [that] is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 13. Therefore, I would find the trial court erred by granting summary judgment to UDF.

### Existence of Duty

{¶ 21} The precedent set forth by the majority today is concerning because the resulting interpretation of the open and obvious doctrine eliminates all right of recovery in a slip and fall, or trip and fall scenario. A property owner has a duty to warn or correct a hazard that could be injurious to invitees. Yet the majority opinion today holds that if one can possibly see the condition after-the-fact, there is no duty. In other words, the majority requires the hazard to be *invisible* in order for an invitee to have a right of recovery. *See, e.g., Mulcahy v. Best Buy Stores, LP*, 5th Dist. Delaware No. 13CAE060051, 2014-Ohio-1163, quoting *Szerszen v. Summit Chase Condominiums*, 10th Dist. Franklin No. 09-AP-1183, 2010-Ohio-4518, ¶ 16 ("there exist few substances that are completely invisible when one knows to look for it and is looking directly at it"). On the other hand, there is no duty upon a landowner to warn or correct a hazard if the hazard is unknown or invisible because the landowner had no notice of the defect and no opportunity to warn invitees or otherwise

remedy the defect. There is no duty if the hazard is visible, yet no duty if the hazard is invisible. Today's majority opinion creates a "Catch-22."

**{¶ 22}** This court has consistently held that a hazard may be considered open and obvious, and thus not actionable, but only when the hazard "is in plain view and *readily discoverable upon ordinary inspection.*" (Emphasis added.) *Forste v. Oakview Constr., Inc.*, 12th Dist. Warren No. CA2009-05-054, 2009-Ohio-5516, ¶ 16, citing *Parsons v. Lawson Co.*, 57 Ohio App.3d 49, 51 (12th Dist.1989); *see also Barnett v. Beazer Home Invests, L.L.C.*, 180 Ohio App.3d 272, 2008-Ohio-6756, ¶ 32 (12th Dist.). "The crucial inquiry is whether an invitee exercising ordinary care would have seen and been able to guard against the condition." *Zitron v. Sweep-A-Lot*, 10th Dist. Franklin No. 09AP-1110, 2010-Ohio-2733, ¶ 11; *Kidder v. Kroger Co.*, 2d Dist. Montgomery No. 20405, 2004-Ohio-4261, ¶ 11. However, while customers, as invitees, are expected to exercise ordinary care when walking through a store, "the law does not require them to 'look constantly downward.'" *Mohn v. Wal-Mart Stores, Inc.*, 3d Dist. Hardin No. 6-08-12, 2008-Ohio-6184, ¶ 14, quoting *Grossnickle v. Germantown*, 3 Ohio St.2d 96 (1965), paragraph two of the syllabus.

**{¶ 23}** Different than the facts before us, the Ohio Supreme Court in *Armstrong* applied the open and obvious doctrine because the hazardous condition in question was visible to *all* persons entering and exiting the store. *Armstrong* at ¶ 16; *see also Boston v. A & B Sales, Inc.*, 7th Dist. Belmont No. 11 BE 2, 2011-Ohio-6427, ¶ 28 ("[o]pen and obvious hazards are neither hidden from view nor concealed and are discoverable by ordinary inspection").

**Possibly Observable v. Obvious**

**{¶ 24}** In the present case, there is no dispute that the condition was "open," as its location was within the sidewalk immediately outside the double doors used for ingress and

egress. "Obvious," however, means "*easily* discovered, seen" or "*readily* perceived by the eye." (Emphasis added.) Black's Law Dictionary (6th Ed. 1990). Obvious does not mean "possibly observable" by any definition. A condition that is "obvious" does not require one to search or scrutinize the landscape to discover it. *See, e.g., Mulcahy* at ¶ 29, 2014-Ohio-1163 (reversing a trial court's grant of summary judgment to a landowner where an aisle shelf was a similar color to the color of the floor making it difficult to perceive); *Boston* at ¶ 34 ("where reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine").

### "Blended" Hazard

{¶ 25} Here, appellant stumbled and fell because of an indention or hole in the sidewalk that, by appellant's estimations, measured approximately 6" x 6" wide and 3" deep. Although appellant acknowledged the indention was a "good size hole," she testified that the reason she could not observe it was because it "blended" with the surrounding concrete. In essence, the hole was concealed by little, if any, color contrast and was certainly not in a location where a hole would be anticipated. Appellant further explained that the hole itself looked exactly like the other, non-defective portions of the concrete. A review of the photographs supports appellant's testimony, as those photographs appear to reveal that the sidewalk is made of exposed aggregate, which would camouflage the defect, being a deteriorating subsurface, creating a shallow hole.[1] The configuration or shape of the hole is not defined or distinct and certainly not readily apparent. Photograph exhibits two and three, which were taken during the daylight hours when appellant alleged the accident occurred, do not support the majority's conclusion that the condition was "so obvious" that it was easily seen and readily apparent to *all* persons exercising reasonable care under the

---

1. Exposed aggregate concrete is a type of finish to concrete where the stones (aggregate) are shown on the surface of the concrete for aesthetic purposes.

circumstances. *See Armstrong*, 99 Ohio St.3d at 82 (explaining that if the hazardous condition is "so obvious" that all persons would have had to observe the hazard, then the law absolves the property owner from taking any further action to protect an invitee).

{¶ 26} Moreover, the majority inappropriately emphasizes speculative testimony from appellant's deposition, in which she reasonably acknowledged it could be "fair to say" that she "could have seen" the hazardous condition if looking directly at it.[2] The majority opinion believes this answer is evidence that the defective concrete was easily seen prior to appellant's fall because a photograph evidencing some deteriorating concrete with indications of a hole was pointed out to her after-the-fact.[3] However, an after-the-fact hypothetical is not dispositive of appellee's duty owed to its customers. The fact that it would be "fair to say" that one "could have seen," after-the-fact, does not necessarily mean the condition was easily observable or readily perceived prior to injury. *Middleton v. Meijer, Inc.*, 2d Dist. Montgomery No. 23789, 2010-Ohio-3244, ¶ 25 (Grady, J., concurring) (the fact that a condition "was observable on subsequent examination may be determinative of whether [the plaintiff] should have seen it, but not whether it was as a matter of law open and obvious"). In basing its decision on this isolated testimony, and ignoring her description of the hole as concealed or hidden because it was "blended" into the surrounding area, the majority allows after-the-fact expressions by a truthful plaintiff to circumvent the proper standard for the "open and obvious" doctrine, i.e., whether, under the circumstances, the condition was "discoverable upon ordinary inspection."[4]

---

2. The majority's opinion assumes that the "it" contained in the question refers to a hole. Neither the question asked, nor the answer refers to the world "hole."

3. Furthermore, it appears the photograph was taken at night with a flash (which is not when the incident occurred).

4. If the majority opinion focused upon "discovery upon ordinary inspection," it would have difficulty reconciling the testimony of two store employees who support the description given by appellant.

{¶ 27} Appellant could not see the defect, which was partially concealed or hidden by the surrounding concrete on her way into the store and again, on her way out. She also elaborated that the defect "blended" with the nondefective portion of the sidewalk. Appellant's characterization as to why it was difficult to perceive the deteriorating and defective concrete remains uncontroverted. In other words, there is no testimony that the hazardous condition was obvious (i.e., easily seen or readily perceived). It was only after repeated questions regarding photographs that appellant reasonably acknowledged that "it would be fair to say" she "could have" seen it if looking directly at it. When taken in the light most favorable to appellant, as the nonmoving party, there is a question of fact as to whether the defective concrete was an obvious condition. As previously noted, the law does not require an invitee to "look constantly downward."[5] Whether appellant could have observed the hole after it is pointed out to her and after she *purposefully inspected* the area, is not determinative of whether reasonable minds could differ as to the condition's obviousness prior to appellant's fall.[6]

**Uncontradicted Corroborating Testimony**

{¶ 28} The evidence provided by the two UDF employees, Payne and Rhodes, was that they regularly traversed the exact same location, but never noticed the defective concrete in the sidewalk causing a hole. The majority minimizes the importance of this testimony by suggesting that we analyzed similar facts in *McQueen v. Kings Island*, 12th Dist. Warren No. CA2011-11-117, 2012-Ohio-3539. However, the facts in *McQueen* are

---

5. Particularly when appellant's line of travel to reach her vehicle at the gas pumps requires her to step down, and into, parking spaces, which were inviting incoming vehicles.

6. As a side note, each issue of *Highlights for Children* has a "Hidden Picture" puzzle containing hidden objects to find in the picture. Once an "impossible-to-find" object is pointed out by someone else, its location appears "obvious" despite the difficulty in seeing it beforehand. Similarly, in *Where's Waldo*, it is difficult to understand why the missing character was not seen earlier *after* someone else points out his location. Subsequently identifying a shape or object alone does not necessarily mean it was obvious from the beginning.

significantly different.

{¶ 29} In *McQueen*, we considered the significance of testimony by a Kings Island employee that he did not observe the alleged defective condition in pavement following an inspection of the general area. *Id.* at ¶ 27. In that case, the incident occurred in a rather large amusement park and the employee did not know the exact whereabouts of the defective condition. *Id.* There was no testimony that the Kings Island employee knew of, or had ever traversed, the exact area where the fall occurred. *Id.* In *McQueen* the condition clearly was "discoverable" as the plaintiff admitted that she knew the blacktop was "cracking" and had no explanation for not observing what otherwise appeared to be "visible to all persons using the walkway." *Id.* at ¶ 28.

{¶ 30} Here, two UDF employees testified that they were very familiar with the sidewalk in front of the store and would, by necessity, walk in the vicinity of the defective condition each time they entered or exited the store.[7] Furthermore, both employees testified that they were responsible for sweeping the sidewalk in front of the store, where the condition existed, and picking up cigarette butts in the general area. Nevertheless, neither employee perceived the defective condition, which was "blended" into the sidewalk, prior to appellant's accident, which supports the notion that the condition was, to some extent, camouflaged or concealed by what appears to be an exposed aggregate finish. Appellant's description of the defective condition, being uncontroverted, when considered in conjunction with the daytime photographs of the deteriorating concrete, further supports the conclusion that the resulting indention or hole in the concrete was not such an obvious condition that was readily apparent to all persons exercising reasonable care.

**Diminished Opportunity to Detect**

---

7. Payne testified that she had walked over the area "hundreds" of times and had never noticed the defective concrete or hole in the sidewalk.

{¶ 31} Finally, there were also attendant circumstances presented by the traffic pattern in the parking lot. Appellant's testimony indicates that the hazard was at the edge of the sidewalk, immediately before a step down into a row of parking spaces, and she fell as she was looking out for traffic. Photographs of the sidewalk show that a row of parking spaces abutted the sidewalk; therefore appellant was obligated to be on the immediate watch for traffic as she stepped down and headed back to her vehicle. UDF is responsible for the placement of these parking spaces with knowledge that store customers would be parking their vehicles there, which would be an obstacle or distraction for foot traffic headed to the gas pumps. *See Mulcahy*, 2014-Ohio-1163 at ¶ 20 ("[a]ttendant circumstances do not include any circumstance existing at the moment of a fall, unless the individual was distracted by an unusual circumstance created by the property owner"). UDF was aware, or should have been aware, that customers would be required to step down, and walk through parking spaces, and those customers would be looking for the presence or absence of vehicles entering those spaces.

{¶ 32} The significance of traffic intensity and traffic flow has been considered differently in a number of cases. *See Riley v. Wendy's Intern., Inc.*, 8th Dist. Cuyahoga No. 73996, 1999 WL 258187 (Apr. 29, 1999) (avoiding vehicles in parking lot an attendant circumstance); *Thompson v. Kroger Co.*, 2d Dist. Montgomery No. 13248, 1992 WL 127708 (June 9, 1992) (concluding a jury question exists where a plaintiff contends vehicular traffic in a poorly-lit parking lot created a distraction); *Jacobsen v. Coon Restoration & Sealants, Inc.*, 5th Dist. Stark No. 2011-CA-00001, 2011-Ohio-3563, ¶ 19 ("[a]ttendant circumstances surrounding an incident may create a material issue of fact as to whether the danger was open and obvious"); *but see Bounds v. Marc Glassman, Inc.*, 8th Dist. Cuyahoga No. 90610, 2008-Ohio-5989. In the present case, there is a question of fact as to whether the foot and vehicle traffic pattern, in conjunction with the row of parking spaces, compromised appellant's

ability to perceive the defective concrete as she left the sidewalk.

{¶ 33} In light of the foregoing, and based on the particular facts and circumstances of this case, while being mindful that all of the disputed facts must be viewed in the light most favorable to appellant, I disagree with the majority's decision finding that the defective concrete was an open and obvious condition. I further disagree with the majority that there were no attendant circumstances as a matter of law. Accordingly, I respectfully dissent from the majority's decision that determines appellant should not have an opportunity to have a jury decide these issues in question.