[Cite as *Base-Smith v. Lautrec, Ltd.*, 2014-Ohio-349.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| KIMBERLY A. BASE-SMITH, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2013-07-115 |
| | : | O P I N I O N |
| - vs - | | 2/3/2014 |
| | : | |
| LAUTREC, LTD. d.b.a. CSV Hamilton, LLC, et al., | : | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2012-02-0648

McKenzie & Snyder LLP, Christopher J. Snyder, Andrew R. Tobergte, 229 Dayton Street, Hamilton, Ohio 45011, for plaintiff-appellant

Reminger Co., L.P.A., Carrie M. Starts, 525 Vine Street, Suite 1700, Cincinnati, Ohio 45202, for defendant-appellee, Lautrec, Ltd. d.b.a. CSV Hamilton, LLC

Sharon M. Shartzer, 115 West Ninth Street, Cincinnati, Ohio 45202, for defendant-appellee, Progressive Insurance Co.

Robert J. Byrne, Assistant Ohio Attorney General, 150 East Gay Street, 21st Floor, Columbus, Ohio 43215, for defendant, Ohio Dept. of Job & Family Services

**PIPER, J.**

{¶ 1} Plaintiff-appellant, Kimberly Base-Smith, appeals a decision of the Butler

County Court of Common Pleas granting summary judgment in favor of defendant-appellee,

Lautrec Ltd. d.b.a. CSV Hamilton LLC (Lautrec).[1]

{¶ 2} In 2010, Base-Smith moved into the Countryside Village of Hamilton (Countryside), a mobile home community owned by Lautrec. Countryside contains a community mailbox area situated under a roofed pavilion. The pavilion contains a gutter and downspout system meant to channel discharge water from the roof to an in-ground pipe, thereby routing water into the storm drain. However, the downspout failed to connect to the in-ground pipe as it was designed to do, and the in-ground pipe itself was broken and filled with debris.

{¶ 3} On January 30, 2011, Base-Smith parked across the street from the pavilion, with the intent of retrieving her mail. In order to access the pavilion, Base-Smith was required to walk across the street and up a slightly-inclined paved area in front of the mailboxes. The area surrounding the pavilion contained accumulated snow and ice, and Base-Smith slipped on ice and fell when she stepped onto the asphalt approaching the mailboxes. Base-Smith sustained serious injuries to her teeth, jaw, arm, neck, back and hip as a result of her fall.

{¶ 4} Base-Smith brought a negligence suit against Lautrec, claiming that her fall was caused by an unnatural accumulation of ice created by water that had flowed down from the broken downspout near the mailbox area. Base-Smith also asserted that the condition of the downspout constituted a violation of applicable statutes and codes so that Lautrec was negligent per se in causing her fall.[2] Lautrec filed a motion for summary judgment, which the

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.

2. Base-Smith did not specifically assert in her complaint that Lautrec committed negligence per se or state which statute was allegedly violated. Nonetheless, the parties proceeded throughout the summary judgment process addressing the negligence per se argument in full. Ohio law does not require negligence per se to be pled with particularity because negligence and negligence per se are closely-intertwined concepts and Ohio's Civ.R. 8 requires only notice pleading. *Collier v. Libations Lounge LLC*, 8th Dist. Cuyahoga No. 97504, 2012-Ohio-2390, ¶ 24.

trial court granted on the basis that the ice upon which Base-Smith fell was open and obvious. Base-Smith now appeals the trial court's grant of summary judgment, raising the following assignment of error.

{¶ 5} THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

{¶ 6} Base-Smith argues that the trial court erred in granting Lautrec's motion for summary judgment.

{¶ 7} This court's review of a trial court's ruling on a summary judgment motion is de novo. *Lindsay P. v. Towne Properties Asset Management Co., Ltd.*, 12th Dist. Butler No. CA2012-11-215, 2013-Ohio-4124. Civ.R.56 sets forth the summary judgment standard and requires that (1) there be no genuine issues of material fact to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion being adverse to the nonmoving party. *Slowey v. Midland Acres, Inc.*, 12th Dist. Fayette No. CA2007-08-030, 2008-Ohio-3077, ¶ 8. The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978).

{¶ 8} The nonmoving party "may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing the existence of a genuine triable issue." *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385 (1996). A dispute of fact can be considered "material" if it affects the outcome of the litigation. *Myers v. Jamar Enterprises*, 12th Dist. Clermont No. CA2001-06-056, 2001 WL 1567352,*2 (Dec. 10, 2001). A dispute of fact can be considered "genuine" if it is supported by substantial evidence that exceeds the allegations in the complaint. *Id.*

{¶ 9} Summary judgment is not appropriate where the resolution of a factual dispute will depend in part upon the credibility of the witnesses. *Layer v. Kings Island Co.*, 12th Dist.

Warren No. CA2002-10-106, 2003-Ohio-2375, ¶ 14, citing *Turner v. Turner*, 67 Ohio St.3d 337 (1993). Nor is summary judgment the proper vehicle for weighing the evidence where only a trial on the merits can resolve the dispute. *Wagner v. Ohio State Univ. Med. Ctr.*, 188 Ohio App.3d 65, 2010-Ohio-2561, ¶ 37 (10th Dist.).

{¶ 10} To avoid summary judgment in a negligence action, the plaintiff must show: (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty of care, and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. *Mayes v. Boymel*, 12th Dist. Butler No. CA2002-03-051, 2002-Ohio-4993, ¶ 9. An owner or occupier of a business owes its invitees a duty of ordinary care in maintaining the premises in a "reasonably safe condition" so that its invitees are not exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203 (1985).[3] However, an owner or occupier of land does not owe a duty to business invitees to remove natural accumulations of snow and ice or to warn invitees of the dangers inherent to such accumulations. *Brinkman v. Ross*, 68 Ohio St.3d 82, 83 (1993). Instead, the dangers associated with natural accumulations of snow and ice are typically considered to be so open and obvious that an owner or occupier may reasonably expect that a business invitee will safeguard himself against those dangers. *Holbrook v. Kingsgate Condominium Assn.*, 12th Dist. No. CA2009-07-193, 2010-Ohio-850, citing *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968), paragraph two of the syllabus.

{¶ 11} The general rule stated above is subject to two exceptions. First, a duty to exercise reasonable care to protect business invitees arises when an owner or occupier has actual or constructive notice that a natural accumulation of snow or ice has created a condition substantially more dangerous than an invitee normally associates with snow and

---

3. Although Base-Smith should be classified as a tenant, the same law applies to tenants as does to business invitees when determining what duty is owed by the owner/occupier of land. *Burress v. Associated Land Group*, 12th Dist. Clermont No. CA2008-10-096, 2009-Ohio-2450.

ice. *Mikula v. Tailors*, 24 Ohio St.2d 48 (1970), paragraph five of the syllabus. Second, an owner or occupier has a duty to exercise reasonable care to protect business invitees from *unnatural* accumulations of snow or ice. More precisely, the owner or occupier has a duty "to refrain from creating or allowing the creation of an unnatural accumulation of ice or snow, if that accumulation results in a condition that is substantially more dangerous than would have resulted naturally." *Burress v. Associated Land Group*, 12th Dist. Clermont No. CA2008-10-096, 2009-Ohio-2450, ¶ 11.

{¶ 12} An "unnatural" accumulation of snow or ice requires "causes and factors other than the inclement weather conditions of low temperature, strong winds and drifting snow * * *." *Walters v. Middletown Properties Co.*, 12th Dist. Butler No. CA2001-10-249, 2002-Ohio-3730, ¶ 15. "[T]he melting of ice and snow and subsequent refreezing is insufficient, standing alone, to impose liability," and instead, the owner must do something that causes the ice to accumulate in an unexpected location or manner in order for the accumulation to be considered unnatural. *Holbrook*, 2010-Ohio-850 at ¶ 17, quoting *Lawrence v. Jiffy Print, Inc.*, 11th Dist. Trumbull App. No. 2004-T-0065, 2005-Ohio-4043, ¶ 22.

{¶ 13} Even if this court were to disagree with the trial court and find that there were genuine issues of material fact regarding whether the defective downspout caused the unnatural accumulation of ice upon which Base-Smith fell, we find that there are no genuine issues regarding whether such ice was an open and obvious danger.

{¶ 14} Even when a plaintiff's slip and fall was due to unnatural accumulations of snow and ice, this court, and numerous others, have found the open and obvious doctrine applicable, thus absolving the duty of care on the part of the landowner. *Burress v. Associated Land Group*, 12th Dist. Clermont No. CA2008-10-096, 2009-Ohio-2450, ¶ 14; *Mounts v. Ravotti*, 7th Dist. Mahoning No. 07 MA 182, 2008-Ohio-5045, ¶ 53; *Whitehouse v. Customer is Everything!, Ltd.*, 11th Dist. Lake No. 2007-L-069, 2007-Ohio-6936, ¶ 72; *Prexta*

*v. BW-3, Akron, Inc.*, 9th Dist. Summit No. 23314, 2006-Ohio-6969, ¶ 13; *Scholz v. Revco Discount Drug Ctr., Inc.*, 2d Dist. Montgomery No. 20825, 2005-Ohio-5916, ¶ 17-19; *Couture v. Oak Hill Rentals, Ltd.*, 6th Dist. Ottawa No. OT-03-048, 2004-Ohio-5237, ¶ 16; *Bevins v. Arledge*, 4th Dist. Pickaway No. 03CA19, 2003-Ohio-7297, ¶ 18-20.

{¶ 15} The open and obvious doctrine, which is based on a common-law duty to warn invitees of latent or hidden dangers, applies to common law premises liability even when it involves claims against a landlord. *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, ¶ 25. Therefore, "[w]here a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, syllabus.

{¶ 16} Base-Smith essentially argues that the ice on which she fell was not open and obvious because she stepped on areas that she thought were wet and was not aware of the fact that the areas were actually ice. Base-Smith testified that she "stepped on what looked like just flat damp wet pavement," and that on the day of her fall, she did not believe the area to be icy because the damp spots had no "thickness to it." However, Base-Smith's testimony reveals that she was aware that the area where she fell was at least wet, and that the conditions of the walkway that day were not without dangers. While her belief that the area contained water rather than ice was mistaken, such mistake does not invalidate the fact that the dangerous conditions were open and obvious.

{¶ 17} Ohio law is clear, and as this court has expressly stated, "snow and ice are a part of wintertime life in Ohio and hazardous winter weather conditions and their attendant dangers are to be expected in this part of the country." *Mayes v. Boymel*, 12th Dist. Butler No. CA2002-03-051, 2002-Ohio-4993, ¶ 14. Moreover, we noted that a "reasonable person living in Ohio should be aware that in the wintertime a wet and slippery condition can quickly become an icy and potentially dangerous condition." *Id.* The fact that Base-Smith was

clearly aware that the areas upon which she chose to step were wet, along with the reasonable inference that Base-Smith would know that wet asphalt freezes in the winter, demonstrates that she was aware that the damp areas approaching the mailboxes constituted a dangerous condition. *See Holbrook v. Kingsgate Condominium Association*, 12th Dist. Butler No. CA2009-07-193, 2010-Ohio-850 (affirming summary judgment where two plaintiffs fell on ice, though plaintiffs claimed that the danger was not open and obvious because the areas where they fell looked like "water" and "wet" pavement instead of ice).

{¶ 18} Moreover, and according to Base-Smith's deposition testimony, she was aware that more than damp conditions were present on the day she fell. Base-Smith testified that snow can be slippery and can constitute a hazardous condition, and admitted that there were patches of snow and ice all around the mobile home park. She also confirmed that she saw accumulated ice in nearby locations. Base-Smith further testified that when she began her approach to the mailboxes, it was "still lighter than dark" and that she could see 50 yards ahead of her and "all the way to the end of the horizon of my view." She also described how snow and ice, which had already accumulated, was further "crunched" together by people driving over it and how common areas of the mobile home park contained remnants and accumulations of snow and ice.

{¶ 19} Base-Smith also testified that she was not focusing on "seeing white snow ice," as she approached the pavilion, but she nonetheless observed "wetness" and "little crunchy mounds around the gutter." Base-Smith expressly stated that she chose to step in areas that were "just wet" and that she was "just careful." Base-Smith also admitted that there was visible ice on the curb leading up to the pavilion, and that in front of the mailboxes, "there were patchy spots of snow what used to be snow and looked icy [sic]." This testimony indicates that the dangers were open and obvious because the snow and icy patches were clearly visible to Base-Smith on the day she fell. Even when construing the facts in a light

most favorable to Base-Smith, there are no genuine issues of material fact that remain in regard to the common law negligence claim because the condition that caused Base-Smith's fall was open and obvious.

{¶ 20} While the open and obvious doctrine negates Lautrec's duty as it relates to Base-Smith's common law negligence claim, the open and obvious doctrine does not act to bar her negligence per se claim.[4] Separate from the discussion of common law negligence, a negligence per se claim predicated upon the mobile home park owner's duty to repair cannot be defeated merely because the danger that caused the plaintiff's injury was open and obvious. *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362.[5] In so much as the trial court found that the open and obvious doctrine defeated both of Base-Smith's claims, the trial court erred.

{¶ 21} After reviewing the record, we find that there are genuine issues of fact regarding whether or not the defective drainage system constituted negligence per se. A violation of a statute that sets forth specific duties constitutes negligence per se. *Swader v. Paramount Property Mgt.*, 12th Dist. Butler No. CA2011-05-084, 2012-Ohio-1477, ¶ 22. However, negligence per se does not equate to *liability* per se, as negligence per se does not dispense with a plaintiff's obligation to prove the landlord's breach was the proximate cause of the injury complained of, nor does it remove a plaintiff's obligation to prove the landlord

---

4. The trial court's opinion addressed the open and obvious doctrine, and then made a finding that the dangers that caused Base-Smith's fall were open and obvious. The trial court then concluded that "summary judgment remains proper as the Plaintiff was entirely aware of the very hazard (ice near the mailboxes) upon which her *claims* are based." (Emphasis added.) While Base-Smith argues that the trial court failed to rule upon her negligence per se claim, the record indicates that the trial court considered both of her claims extinguished through summary judgment because the open and obvious doctrine acted as a bar to both negligence claims. However, and as will be discussed, the open and obvious doctrine does not act to bar a negligence per se claim.

5. The *Robinson* court found that "the 'open and obvious' doctrine does not dissolve the statutory duty to repair." 2006-Ohio-6362 at ¶ 25. In so doing, the court analyzed the issue pursuant to R.C. Chapter 5321, which sets forth a landlord's obligations. Some of these obligations include: complying with the requirements of health, building, and safety codes; making repairs to keep the premises in a fit and habitable condition; and keeping all common areas of the premises in a safe and sanitary condition. These same obligations apply to owners of mobile home parks as codified in R.C. 4781.38(A), which will be discussed below.

received actual or constructive notice of the condition causing the statutory violation. *Packman v. Barton*, 12th Dist. Madison No. CA2009-03-009, 2009-Ohio-5282, ¶ 15. Landlords will be excused from liability where they neither knew nor should have known of the factual circumstances that caused the statutory violation. *Sikora v. Wenzel*, 88 Ohio St.3d 493, 493 (2000), syllabus.

{¶ 22} "Actual notice" is defined as notice "given directly to, or received personally by, a party." *Swader* at ¶ 24, quoting *Black's Law Dictionary*, 1090 (8th Ed.2004). "Constructive notice" is notice "arising by presumption of law from the existence of facts and circumstances that a party had a duty to take notice of." *Id.* Constructive notice of an unsafe condition can be proven by a demonstration that the unsafe condition existed so that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger. *Id.* at ¶ 25, citing *Patterson v. Ahmed*, 6th Dist. Lucas No. L-09-1222, 2010-Ohio-4160, ¶ 19.

{¶ 23} Pursuant to R.C. 4781.38(A),

> A park operator who is a party to a rental agreement shall:
>
> (1) Comply with the requirements of all applicable building, housing, health, and safety codes which materially affect health and safety, and comply with rules of the manufactured homes commission;
>
> (2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;
>
> (3) Keep all common areas of the premises in a safe and sanitary condition

{¶ 24} According to the affidavit of Base-Smith's expert, the defective drainage system caused the mailbox pavilion area and adjoining walkways to be in an unsafe condition. If the defective drainage system constituted a violation of any of the requirements found in R.C.

4781.38(A)(1)-(3), then it is possible that such violation would constitute a conclusive showing of Lautrec's breach of the duty it owed to Base-Smith. *Sikora,* 88 Ohio St.3d at 496.[6]

{¶ 25} According to the record, litigation of the negligence per se issue is warranted because there are genuine issues of fact as to whether Lautrec failed to comply with its statutory obligations by permitting the defective drainage system to remain on the property. The record indicates that the downspout was disconnected or malfunctioning, and was in such a condition that it was not properly channeling the water away from the walkway into the in-ground drainage pipe, as it was intended to do. The record also indicates that the in-ground pipe itself was damaged and filled with debris. However, reasonable minds may differ as to whether such defects constituted a violation of the statute, or was the proximate cause of Base-Smith's fall and resulting injuries.

{¶ 26} Reasonable minds may also differ as to whether Lautrec had actual or constructive notice of the defective condition, and the issue requires further litigation. We note that the record contains conflicting evidence regarding this issue. While Base-Smith testified that she never informed Countryside management of the condition of the drainage system, photographs indicate that the drainage system's poor condition is clearly visible and may have existed for a sufficient length of time to have been discovered by Countryside's management.

{¶ 27} The issues regarding negligence per se will depend upon the credibility of witnesses and weighing of evidence. Although we have found that there are genuine issues

---

6. Base-Smith apparently references an alleged building code violation to demonstrate Lautrec's violation of R.C. 4781.38(A)(1), which requires park operators to comply with applicable building codes. While a statute such as R.C. 4781.38(A) may form the basis of a negligence per se claim, we note that a violation of a building code cannot alone form the basis of a negligence per se claim because such rules and regulations are passed by an administrative agency rather than promulgated by the Ohio General Assembly. *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 12, 2009-Ohio-2495.

of fact regarding the negligence per se claim, this court takes no position as to whether or not Base-Smith will prevail on the merits.

{¶ 28} For the foregoing reasons, the trial court's grant of summary judgment is reversed on the statutory or negligence per se claim, as there are genuine issues of material fact. However, as to the common law negligence claim, the trial court's judgment is affirmed because the dangers associated with the unnatural accumulation where Base-Smith fell were open and obvious.

{¶ 29} Judgment affirmed in part, reversed in part, and the issue is remanded for further proceedings.

RINGLAND, P.J., and M. POWELL, J., concur.