[Cite as *Capella v. Historic Developers, L.L.C.*, 2018-Ohio-546.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| DONNA CAPELLA, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2017-07-109 |
| | : | O P I N I O N<br>2/12/2018 |
| - vs - | : | |
| | : | |
| HISTORIC DEVELOPERS, LLC, et al., | : | |
| Defendants-Appellees. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2017-01-0080

Robbins, Kelly, Patterson & Tucker, Jarrod M. Mohler and Sean P. Mahaffey, 7 West Seventh Street, Suite 1400, Cincinnati, Ohio 45202, for plaintiff-appellant

John K. Benintendi, P.O. Box 145496, Cincinnati, Ohio 45250-5496, for defendant-appellee, Historic Developers, LLC

Markesbery & Richardson Co., LPA, Jason A. Snyder and Glenn A. Markesbery, 2368 Victory Parkway, Suite 200, Cincinnati, Ohio 45206, for defendant-appellee, Coon Caulking & Sealants, Inc. dba Coon Restoration & Sealants

Reminger Co., L.P.A., Timothy B. Spille and Adair M. Smith, 525 Vine Street, Suite 1700, Cincinnati, Ohio 45202, for defendant-appellee, Hamilton Special Improvement District

Patsfall, Yeager & Pflum, Susan M. Salyer and Stephen M. Yeager, 205 West Fourth Street, Suite 1280, Cincinnati, Ohio 45202, for defendant-appellee, Cox Maintenance Service, LLC

**S. POWELL, J.**

{¶ 1} Plaintiff-appellant, Donna Capella, appeals from the decision of the Butler County Court of Common Pleas granting summary judgment to defendants-appellees, Historic Developers, LLC ("Historic Developers"), Coon Caulking & Sealants Inc. dba Coon Restoration & Sealants ("Coon Restoration"), Hamilton Special Improvement District ("Hamilton SID"), and Cox Maintenance Service, LLC ("Cox Maintenance"), on claims alleging negligence per se and common law negligence for injuries she suffered after she slipped and fell on water and ice while walking on a public sidewalk located outside her apartment building. For the reasons outlined below, we affirm.

## The Parties

{¶ 2} This case includes several parties and their respective involvement with an apartment building located at 228 High Street, Hamilton, Butler County, Ohio.

{¶ 3} On December 14, 2013, Capella slipped and fell on water and ice while she and her six-year-old grandson were walking on a public sidewalk towards one of the apartment building's first-floor entrances. The apartment building at issue is part of a manufactured home community known as the Mercantile Lofts. Prior to her fall, it is undisputed that Capella had recently signed a lease to rent an apartment unit in the Mercantile Lofts apartment building.

{¶ 4} At all times relevant, the Mercantile Lofts apartment building was owned, operated, and managed by Historic Developers. Historic Developers, therefore, was Capella's landlord. Coon Restoration is a general contractor that oversaw extensive renovations to the Mercantile Lofts apartment building. The parties do not dispute that the renovations to the Mercantile Lofts apartment building were completed in 2011, two years prior to Capella's fall.

{¶ 5} In addition to these two parties, we note that Hamilton SID is a nonprofit

corporation authorized by R.C. Chapter 1710 of the Ohio Revised Code to develop and implement public improvements and services within the downtown Hamilton area. To that end, Hamilton SID hired Cox Maintenance to remove snow and ice from the public sidewalks located in downtown Hamilton as is oftentimes necessary during the cold winter months in Ohio. According to an affidavit submitted by Cox Maintenance, which Capella does not dispute, Cox Maintenance spent "many manhours on the morning of December 14, 2013 applying a large amount of salt and clearing roadways and sidewalks [in Hamilton]," including the public sidewalk surrounding the Mercantile Lofts apartment building.

{¶ 6} Where appropriate, Historic Developers, Coon Restoration, Hamilton SID, and Cox Maintenance are referred to collectively as "appellees."

### Facts and Procedural History

{¶ 7} On September 24, 2014, Capella filed a complaint against Historic Developers alleging claims of negligence per se and common law negligence. As noted above, the allegations arose after Capella slipped and fell on water and ice while she and her six-year-old grandson were walking on a public sidewalk towards one of the Mercantile Loft apartment building's first-floor entrances. Again, at the time of her fall, it is undisputed that Capella had recently signed a lease to rent one of the Mercantile Lofts' apartment units. As part of her complaint, Capella claimed her fall was caused by a faulty or defective downspout attached to the Mercantile Lofts apartment building that created an unnatural accumulation of ice and snow on the public sidewalk where she fell, thereby subjecting Historic Developers to liability for her resulting injuries.

{¶ 8} Several months later, on May 4, 2015 and again on August 12, 2015, Capella amended her complaint to include claims against Coon Restoration, Hamilton SID, and Cox Maintenance. After appellees filed their respective answers to Capella's two amended

complaints, and once Capella was deposed and her expert witnesses disclosed, appellees moved for summary judgment. Appellees' motions for summary judgment were filed on March 1, March 10, and March 21, 2016, respectively. In response, Capella moved the trial court for an extension of time in accordance with Civ.R. 56(F) to conduct additional discovery and respond to appellees' motions for summary judgment.

{¶ 9} On April 27, 2016, while appellees' motions for summary judgment were still pending, the trial court granted Capella's Civ.R. 56(F) motion. However, instead of conducting further discovery and filing her necessary response in opposition, Capella voluntarily dismissed her complaint without prejudice in accordance with Civ.R. 41(A)(1)(a). Pursuant to that rule, "a plaintiff, without order of court, may dismiss all claims asserted by that plaintiff against a defendant by * * * filing a notice of dismissal at any time before the commencement of trial * * *."

{¶ 10} Approximately nine months later, on January 12, 2017, Capella refiled her complaint alleging the same negligence per se and common law negligence claims against appellees. It is undisputed that Capella's refiled complaint named three attorneys of record, one of whom Capella referred to as her lead counsel and point of contact on all matters relating to her case. After filing their respective answers to Capella's refiled complaint, Historic Developers and Cox Maintenance moved for summary judgment. These two motions, which were filed on February 15 and February 22, 2017, were submitted to the trial court approximately one month after Capella had refiled her complaint.

{¶ 11} On March 1, 2017, Capella again moved in accordance with Civ.R. 56(F) for an extension of time to conduct discovery and file her necessary response in opposition to the two then pending motions for summary judgment. This motion was signed by all three attorneys listed in the signature block of Capella's refiled complaint, including the attorney who Cappella referred to as her lead counsel and point of contact. In support of this motion,

Capella included an affidavit from her lead attorney – an attorney who prior had been forced to withdraw from the case – wherein he expressed his desire for additional time to conduct discovery and respond to Historic Developers and Cox Maintenance's motions for summary judgment.

{¶ 12} On March 9, 2017, while Capella's Civ.R. 56(F) motion was still pending, Coon Restoration and Hamilton SID also moved for summary judgment. The following week, on March 15, 2017, Capella filed a supplemental Civ.R. 56(F) motion requesting an extension of time to respond to the now four pending motions for summary judgment. It is undisputed that Capella's supplemental motion included two of the three named counsel previously listed in the signature block of Capella's refiled complaint, omitting Capella's now former lead attorney and point of contact.

{¶ 13} On March 20, 2017, the trial court issued a decision granting Capella's Civ.R. 56(F) motion, providing her with an additional 52 days to conduct discovery and file her response in opposition to appellees' four motions for summary. In so holding, the trial court stated, in pertinent part, the following:

> The Court finds the Affidavit of Counsel on behalf of Plaintiff's Motion for Extension does present sufficient reason for a reasonable extension of time and will permit Plaintiff to respond to all pending Motions for Summary Judgment no later than May 1, 2017. This expands Plaintiff's response time from 21 days to 73 days on the first Motion for Summary Judgment filed, which should be more than adequate for Plaintiff to obtain her expert and conduct additional discovery. The Court expects all defendants to cooperate in the discovery process so that additional requests for extensions are not necessary.

{¶ 14} On April 10, 2017, Capella moved the trial court to reconsider its decision to grant her only an additional 52 days to conduct discovery and file her response in opposition to appellees' four motions for summary judgment. In support of this motion, Capella argued that anything less than a 120-day extension was "simply insufficient, especially considering

the status, nature, and complexity of this matter." In attempting to persuade the trial court further, although not included in either her original or supplemental Civ.R. 56(F) motions, Capella informed the trial court that her lead attorney and point of contact had since withdrawn from the case, thus necessitating additional time for the other two attorneys of record to familiarize themselves with her claims.

{¶ 15} On April 14, 2017, the trial court issued a decision denying Capella's motion for reconsideration. In so holding, the trial court stated:

> It is a common occurrence when a Plaintiff voluntarily dismisses a case pursuant to Civ.R. 41(A) with summary judgment motions pending that the refilling (sic) of the case met with a similar refilling (sic) of the same motions for summary judgment. Plaintiff should have fully expected the same in this case. With more than three months still remaining before the deadline to re-file (April 27, 2017) there is no reason that Plaintiff could not/should not have used that time to prepare for the obvious – at least by retaining the expert witness she has not retained during the past three plus years – instead of re-commencing this case on January 12, 2017 if she was not ready to proceed.

Continuing, the trial court also noted that, although now raising for the first time the issue of her lead counsel's withdrawal from the case, "Plaintiff's first motion was filed on March 1, 2017 – signed by [the other two attorneys of record] – and the stated reasons for an extension did not include [her lead counsel's] disassociation." Concluding, the trial court determined that "a 52-day extension of a 21-day deadline to respond to motions that have, essentially, been pending for a year is more than adequate."

{¶ 16} On May 1, 2017, Capella filed her response in opposition to appellees' four motions for summary judgment. Capella's response was supported by her own affidavit, as well as the affidavits of two of her neighbors at the Mercantile Lofts apartment building. The record also included transcripts of Capella's prior deposition testimony and that of Historic Developers' leasing agent and property manager for the Mercantile Lofts apartment building. Three days later, on May 4, 2017, appellees filed a joint motion to strike certain

portions of Capella's affidavit, arguing the challenged portions were inconsistent and contradictory to Capella's prior deposition testimony.

{¶ 17} On June 27, 2017, the trial court issued a decision granting in part and denying in part appellees' joint motion to strike. Within that same decision, the trial court also granted summary judgment to appellees on Capella's negligence per se and common law negligence claims. In so holding, the trial court determined that:

> there has been no evidence presented that either Capella or any of the defendants knew of, or had any information of, the specific condition of the gutters and downspouts on the Mercantile Building at the exact time that Capella fell; and there has been no evidence presented that specifically identifies the source of the flowing water and underlying ice upon which Capella slipped and fell.

The trial court further determined that "Capella has presented no expert opinion as to any defects in the installation of the gutters/downspouts, or the subsequent failure of those drainage systems."

{¶ 18} Capella now appeals from the trial court's decisions, raising four assignments of error for review. For ease of discussion, Capella's third and fourth assignments of error will be addressed together.

{¶ 19} Assignment of Error No. 1:

{¶ 20} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DEPRIVED CAPELLA OF ADEQUATE TIME TO CONDUCT DISCOVERY IN ORDER TO RESPOND TO THE MOTIONS FOR SUMMARY JUDGMENT.

{¶ 21} In her first assignment of error, Capella argues the trial court abused its discretion in ruling on her Civ.R. 56(F) motion by providing her with only an additional 52 days to conduct discovery and respond to appellees' motions for summary judgment instead of a longer 120-day extension. We disagree.

{¶ 22} Pursuant to Civ.R. 56(F), if it appears the party opposing a motion for

summary judgment cannot present by affidavit facts essential to justify the party's opposition, the trial court may "order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just." A trial court maintains the discretion to manage the discovery process, including the decision whether to grant a Civ.R. 56(F) motion. *BAC Home Loans Servicing, L.P. v. Kolenich*, 194 Ohio App.3d 777, 2011-Ohio-3345, ¶ 19 (12th Dist.). In turn, a trial court's decision regarding the regulation of discovery under Civ.R. 56(F) will not be reversed absent an abuse of discretion. *Buckner v. Wash. Mut. Bank.*, 12th Dist. Butler No. CA2014-01-012, 2014-Ohio-5189, ¶ 16. An abuse of discretion constitutes more than an error of law or judgment; it requires a finding that the trial court acted unreasonably, arbitrarily, or unconscionably. *JPMorgan Chase Bank v. Wanke*, 12th Dist. Butler No. CA2013-06-102, 2014-Ohio-444, ¶ 10, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 23} As noted above, Capella argues the trial court erred and abused its discretion in ruling on her Civ.R. 56(F) motion by only providing her with only an additional 52 days to conduct discovery and respond to appellees' motions for summary judgment instead of a longer 120-day extension. According to Capella, the trial court's decision to grant such "little extra time to conduct discovery" was improper when considering her lead counsel and point of contact had since withdrawn from the case. Capella, however, never included this as a stated reason supporting her Civ.R. 56(F) original or supplemental motions for an extension of time. Just as the trial court before us, we find this omission troubling when considering Capella filed her original Civ.R. 56(F) motion just days after the withdrawal supposedly occurred.

{¶ 24} Capella accuses appellees of "ambush[ing]" her and "prevent[ing] her from conducting the necessary discovery" by filing their respective motions for summary judgment "immediately" after she refiled her complaint on January 12, 2017. The record,

however, does not support Capella's claims, nor does it in any way indicate appellees were attempting to "ambush" her as Capella now suggests. Rather, as the trial court properly acknowledged in its decision denying Capella's motion for reconsideration:

> It is a common occurrence when a Plaintiff voluntarily dismisses a case pursuant to Civ.R. 41(A) with summary judgment motions pending that the [refiling] of the case is met with a similar [refiling] of the same motions for summary judgment. Plaintiff should have fully expected the same in this case.

{¶ 25} After a thorough review of the record, we agree with the trial court's decision. In so holding, we note that when looking at the totality of the circumstances, we cannot say that the trial court abused its discretion by granting an additional 52 days instead of the 120 days requested in order for Capella to complete discovery and respond to appellee's four motions for summary judgment. The injury occurred on December 14, 2013; Capella's initial complaint was filed on September 24, 2014; discovery was conducted during the time period in which the initial complaint was pending; Capella refiled her complaint on January 12, 2017, naming three attorneys of record; the renewed motions for summary judgment were filed on February 15, 2017, February 22, 2017, and March 9, 2017; and the trial court granted Capella a 52-day (or almost 2-month) extension on March 20, 2017. Therefore, based on the facts and circumstances here, we cannot say that the trial court acted unreasonably, arbitrarily, or unconscionably by denying Capella's request for a 120-day extension. *See, e.g., Dawkins v. Miller-Vontz, Ltd.*, 1st Dist. Hamilton No. C-830925, 1985 Ohio App. LEXIS 5371, *8 (Jan. 2, 1985) (trial court did not abuse its discretion denying appellants' Civ.R. 56(F) motion for an extension of time requesting an additional six months to conduct discovery in a case that had been pending for just less than a year where the trial court had already granted appellants a 20-day extension since "appellants had ample time and opportunity to conduct discovery"). Accordingly, finding no error in the trial court's decision, Capella's first assignment of error is without merit and overruled.

{¶ 26} Assignment of Error No. 2:

{¶ 27} THE TRIAL COURT ABUSED ITS DISCRETION IN PARTIALLY GRANTING THE MOTION TO STRIKE CAPELLA'S AFFIDAVIT, AS THE STRICKEN PORTIONS DO NOT CONTRADICT CAPELLA'S DEPOSITION TESTIMONY.

{¶ 28} In her second assignment of error, Capella argues the trial court abused its discretion by granting appellees' joint motion to strike. We again disagree.

{¶ 29} The determination of a motion to strike is within the trial court's broad discretion. *Bank of Am., N.A. v. Jackson*, 12th Dist. Warren No. CA2014-01-018, 2014-Ohio-2480, ¶ 9. In turn, a trial court's ruling on a motion to strike will not be reversed on appeal absent an abuse of that discretion. *Wells Fargo Bank v. Maxfield*, 12th Dist. Butler No. CA2016-05-089, 2016-Ohio-8102, ¶ 32. As noted above, an abuse of discretion constitutes more than an error of law or judgment; it requires a finding that the trial court acted unreasonably, arbitrarily, or unconscionably. *JPMorgan Chase Bank*, 2014-Ohio-444 at ¶ 10, citing *Blakemore*, 5 Ohio St.3d at 219.

{¶ 30} At issue is the trial court's decision to strike certain portions of Capella's affidavit; specifically, the trial court's decision to strike paragraphs 14 and 15 of her affidavit in their entirety, as well as a portion of paragraph 19. The stricken portions stated, in pertinent part, the following:

> 14. As I waited for the ambulance, I observed that the downspout attached to the Mercantile Lofts building had a joint approximately 1 foot off the ground where the square downspout attached to a smaller round pipe.
>
> 15. As I waited for the ambulance, I observed water overflowing from the joint in the downspout and onto the alley and sidewalk, where if (sic) flowed into Market Street.
>
> * * *
>
> 19. I lived at the Mercantile Lofts until May 2016. [Prior to testifying at my deposition], I repeatedly observed the water

leaking from the joint in the downspout and flowing down the side of the building, both in a frozen and unfrozen state.

{¶ 31} Capella claims it was error for the trial court to strike these paragraphs upon finding her averments were wholly inconsistent with and contradictory to her prior deposition testimony when, in actuality, her claims merely served to "supplement her deposition testimony on issues that she was not asked about." However, as the trial court correctly found, Capella's claims contained within these paragraphs are not merely supplementary, but rather, wholly inconsistent with and contradictory to her prior deposition testimony.

{¶ 32} For instance, as it relates to paragraphs 14 and 15, Capella specifically testified at her deposition that she did not see the supposed faulty and defective downspout attached to the Mercantile apartment building on the day of her fall, nor did she observe where any of the water and ice that caused her fall originated. Yet, in her affidavit, Capella claimed to have seen water overflowing from a downspout attached to the Mercantile Lofts apartment building, as well as flowing down the outside wall of said building, immediately after her fall while she waited for the ambulance to arrive. Although Capella claims otherwise, just as the trial court before us, we find Capella's averments contained in paragraphs 14 and 15 to be wholly inconsistent with and contradictory to that of her prior deposition testimony.

{¶ 33} The same is true for the stricken portion of paragraph 19, wherein Capella alleged that during the time she lived at the Mercantile Lofts apartment building she had repeatedly observed water – in both a frozen and unfrozen state – flowing down the outside wall of Mercantile Lofts apartment building and from a downspout attached to the Mercantile Lofts apartment building. As part of her deposition testimony, however, Capella testified that she was unable to identify the source of the water and ice upon which she fell. Therefore, just as the trial court found, because it is undisputed that Capella lived in the

Mercantile Lofts apartment building both before and after testifying at her deposition, Capella's averments contained in paragraph 19 of her affidavit regarding her observations before her deposition took place were also wholly inconsistent with and contradictory to that of her prior deposition testimony.

{¶ 34} As stated by the Ohio Supreme Court, it is well-established that "[a]n affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat the motion for summary judgment." *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, paragraph three of the syllabus. Besides generally alleging the stricken portions of her affidavit were merely supplementary to that of her prior deposition testimony, Capella did not provide any explanation as to why striking her inconsistent and contradictory averments contained within paragraphs 14, 15, and 19 would be improper. The trial court, therefore, properly struck those offending portions of Capella's affidavit. Accordingly, finding no error in the trial court's decision to grant appellees' joint motion to strike as it relates to paragraphs 14, 15, and 19 of Capella's affidavit, Capella's second assignment of error is likewise without merit and overruled.

{¶ 35} Assignment of Error No. 3:

{¶ 36} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE NEGLIGENCE PER SE CLAIMS.

{¶ 37} Assignment of Error No. 4:

{¶ 38} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE NEGLIGENCE CLAIMS.

{¶ 39} In her third and fourth assignments of error, Capella argues the trial court erred by granting summary judgment to appellees on her claims alleging negligence per se and common law negligence. We disagree.

- 12 -

**Summary Judgment Standard of Review**

{¶ 40} Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial. *Roberts v. RMB Ents., Inc.*, 197 Ohio App.3d 435, 2011-Ohio-6223, ¶ 6 (12th Dist.). On appeal, a trial court's decision granting summary judgment is reviewed de novo. *Moody v. Pilot Travel Ctrs., LLC.*, 12th Dist. Butler No. CA2011-07-141, 2012-Ohio-1478, ¶ 7, citing *Burgess v. Tackas*, 125 Ohio App.3d 294, 296 (8th Dist.1998). In applying the de novo standard, the appellate court is required to "'us[e] the same standard that the trial court should have used, and * * * examine the evidence to determine whether as a matter of law no genuine issues exist for trial.'" *Bravard v. Curran*, 155 Ohio App.3d 713, 2004-Ohio-181, ¶ 9 (12th Dist.), quoting *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383 (8th Dist.1997).

{¶ 41} Pursuant to Civ.R. 56, a trial court may grant summary judgment only when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party. *Kolenich*, 2011-Ohio-3345 at ¶ 17 (12th Dist.). The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. *Touhey v. Ed's Tree & Turf, L.L.C.*, 194 Ohio App.3d 800, 2011-Ohio-3432, ¶ 7 (12th Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Once this burden is met, the nonmoving party must then present evidence to show that there is some issue of material fact yet remaining for the trial court to resolve. *Smedley v. Discount Drug Mart, Inc.*, 190 Ohio App.3d 684, 2010-Ohio-5665, ¶ 11 (12th Dist.). In determining whether a genuine issue of material fact exists, the evidence must be construed in the nonmoving party's favor. *Barich v. Scheidler Med. Group LLC.*, 12th Dist. Butler No. CA2015-01-004, 2015-Ohio-4446, ¶ 9, citing *Walters v. Middletown Properties Co.*, 12th Dist. Butler No. CA2001-10-249, 2002-Ohio-3730, ¶ 10.

**Analysis**

{¶ 42} Capella's complaint alleges both negligence per se and common law negligence claims against appellees. While similar in nature, claims alleging negligence per se and common law negligence are nevertheless distinct. Therefore, although taking every effort to discuss identical issues when possible, we review each of Capella's claims separately as it relates to each appellee.

The Principles of Negligence Per Se

{¶ 43} The violation of a statute that sets forth specific duties constitutes negligence per se. *Arnett v. Mong*, 12th Dist. Fayette No. CA2015-10-022, 2016-Ohio-2893, ¶ 11, citing *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, ¶ 22. However, negligence per se does not equate to liability per se. *Orren v. BWF Corp.*, 12th Dist. Warren No. CA2013-11-112, 2015-Ohio-62, ¶ 67. In turn, while proof that a defendant violated a statute setting forth specific duties extinguishes the plaintiff's burden to establish the existence of a duty and the breach of that duty, negligence per se does not dispense with a plaintiff's obligation to prove that the defendant's breach was the proximate cause of the injury complained of. *Johnston v. Filson*, 12th Dist. Clinton No. CA2014-04-007, 2014-Ohio-4758, ¶ 10. As a result, defendants will be excused from liability where they neither knew nor should have known of the factual circumstances that caused the violation. *Packman v. Barton*, 12th Dist. Madison No. CA2009-03-009, 2009-Ohio-5282, ¶ 15. Therefore, to establish a negligence per se claim, the plaintiff must show (1) a violation of a statute, (2) the violation of the statute proximately caused the plaintiff's injuries, and (3) the defendant knew or should have known of the factual circumstances that proximately caused said injuries.

Negligence Per Se: Historic Developers

{¶ 44} Capella argues Historic Developers was not entitled to summary judgment on

- 14 -

her negligence per se claim because the evidence, when viewed in a light most favorable to her, creates a genuine issue of material fact as to whether Historic Developers violated R.C. 5321.04(A)(1), (A)(2), and (A)(3) of the Ohio Landlord Tenant Act, Chapter 4101:1-32-01, Section 3201.4 of the Ohio Basic Building Code as provided within the Ohio Administrative Code, and Sections 521.11, 1713.04, and 1713.25 of the city of Hamilton's Codified Ordinances.  We find no merit to Capella's claim.

*Ohio's Landlord Tenant Act*

{¶ 45} Capella initially argues a question of material fact exists as to whether Historic Developers violated R.C. 5321.04(A)(1), (A)(2), and (A)(3) of the Ohio Landlord Tenant Act by failing to keep the Mercantile Lofts apartment building in a fit and habitable condition, as well as by failing to keep the common areas of the Mercantile Lofts apartment building safe and sanitary.  However, just as the trial court found, even assuming Historic Developers knew that ice had formed on the public sidewalk outside one of the entrances to the Mercantile Lofts apartment building, such a fact is not the equivalent of allowing the premises to become unfit, uninhabitable, unsafe, and unsanitary so as to constitute a violation of R.C. 5321.04(A)(1), (A)(2), and (A)(3) of the Ohio Landlord Tenant Act as a matter of law.  This is particularly true here when considering the record properly before this court is devoid of any evidence that the water and ice that caused Capella's fall – whether a natural or unnatural accumulation – was the result of any defect to the Mercantile Lofts apartment building.

{¶ 46} As the trial court aptly stated, "Capella by her own admission does not know, nor has she presented any evidence from an expert – or anyone else – that knows where the water/ice on which she slipped was formed or what it came from."  In other words, Capella failed to provide any evidence that the water and ice upon which she fell was caused by any act or inaction of Historic Developers.  We agree with the trial court's decision

and further note that, unlike the facts of this case, R.C. 5321.04(A)(1), (A)(2), and (A)(3) of the Ohio Landlord Tenant Act generally relate to substantial defects such as a lack of water or heat, faulty wiring, or vermin infestation. *Mullins v. Grosz*, 10th Dist. Franklin No. 10AP-23, 2010-Ohio-3844, ¶ 33, citing *Aldridge v. Englewood Village, Ltd.*, 2d Dist. Montgomery No. 10251, 1987 Ohio App. LEXIS 8232, *8 (July 22, 1987). That is simply not the case here. Therefore, as it relates to Capella's negligence per se claim alleging Historic Developers violated R.C. 5321.04(A)(1), (A)(2), and (A)(3) of the Ohio Landlord Tenant Act, we find no error in the trial court's decision.

*Ohio's Basic Building Code*

{¶ 47} Capella next argues a question of material fact exists as to whether Historic Developers violated Chapter 4101:1-32-01, Section 3201.4 of the Ohio Basic Building Code as provided within the Ohio Administrative Code. As relevant here, that section provides that "[d]rainage water collected from a roof, awning, canopy or marquee, and condensate from mechanical equipment shall not flow over a public walking surface." Yet, after a thorough review of the record properly before this court, we agree with the trial court's decision finding Capella did not provide any evidence the drainage system and downspouts attached to the Mercantile Lofts apartment building – as opposed to the building next door – were broken or otherwise violated Ohio Basic Building Code Chapter 4101:1-32-01, Section 3201.4.

{¶ 48} Just as the trial court found, the only evidence contained within the record regarding a broken downspout draining water on to the public sidewalk where Capella fell was related to a broken downspout attached to the building next door to the Mercantile Lofts apartment building. There is nothing in the record to indicate, nor did Capella ever allege, that Historic Developers had any interest in that building. In turn, while there are circumstances where failing to comply with the requirements of the Ohio Basic Building

- 16 -

Code as mandated by R.C. 5321.04(A)(1) may constitute negligence per se, *see Sikora v. Wenzel*, 88 Ohio St.3d 493, 495 (2000), that is simply not the case here. Therefore, as it relates to Capella's negligence per se claim alleging Historic Developers violated Chapter 4101:1-32-01, Section 3201.4 of the Ohio Basic Building Code as provided within the Ohio Administrative Code, we find no error in the trial court's decision.

*City of Hamilton's Codified Ordinances*

{¶ 49} Capella also argues a question of material fact exists as to whether Historic Developers violated Sections 521.11, 1713.04, and 1713.25 of the city of Hamilton Codified Ordinances, which provide, in pertinent part, that "[n]o person shall permit any gutter or downspout to become stopped, obstructed or out of repair;" that "[s]torm water shall be properly drained to prevent recurrent or excessive ponding or the entrance of water into any basement or cellar;" and that "[a]ll gutters and downspouts shall be properly installed in accordance with the applicable Building Code and kept in sound working condition and in good repair."

{¶ 50} Similar to our holding above, we agree with the trial court's decision finding Capella did not provide any evidence that any of the gutters, downspouts, or drains attached to the Mercantile Lofts apartment building were stopped, obstructed, or out of repair, or that the drainage system did not otherwise properly drain. Moreover, as advanced by Historic Developers, while there may very well have been ice within the downspout due to the then freezing conditions, such an obstruction is not only generally unpreventable during the winter months in Ohio, but also, as the trial court correctly determined, clearly outside the scope of what was intended by the city of Hamilton when imposing these obligations through the passage of Sections 521.11, 1713.04, and 1713.25.

{¶ 51} Furthermore, as it relates to Capella's claim that the gutters and downspouts attached to the Mercantile Lofts apartment building were not installed correctly – an

apparent construction defect – this court has previously held "a contention that an unnatural accumulation of ice and snow resulted from a construction defect must usually be accompanied by expert testimony. This is because construction defects do not generally fall within the expertise of laypersons." (Internal citation omitted.) *Holbrook v. Kingsgate Condominium Assn.*, 12th Dist. Butler No. CA2009-07-193, 2010-Ohio-850, ¶ 20, citing *Notman v. AM/PM, Inc.*, 11th Dist. Trumbull No. 2002-T-0144, 2004-Ohio-344, 26. While Capella had sufficient time to do so, she did not provide any expert testimony in support of her claims. Therefore, as it relates to Capella's negligence per se claim alleging Historic Developers violated Sections 521.11, 1713.04, and 1713.25 of the city of Hamilton Codified Ordinances, we find no error in the trial court's decision.

## Negligence Per Se: Coon Restoration

{¶ 52} Moving now to Coon Restoration, Capella argues a question of material fact exists as to whether Coon Restoration violated Chapter 4101:1-32-01, Section 3201.4 of the Ohio Basic Building Code as provided within the Ohio Administrative Code and Sections 521.11, 1713.04, and 1713.25 of the city of Hamilton Codified Ordinances. However, as stated previously, Cappella did not provide any evidence the drainage system and downspouts attached to the Mercantile Lofts apartment building were broken or otherwise violated the Ohio Basic Building Code, nor did Capella provide any evidence that any of the gutters, downspouts, or drains attached to the Mercantile Lofts apartment building were stopped, obstructed, or out of repair, or that the drainage system did not otherwise properly drain. Simply stated, Capella did not provide any evidence that the restoration work Coon Restoration oversaw on the Mercantile Lofts apartment building created the water and ice upon which Capella fell some two years later. Therefore, as it relates to Capella's claims alleging Coon Restoration violated Chapter 4101:1-32-01, Section 3201.4 of the Ohio Basic Building Code as provided within the Ohio Administrative Code and Sections 521.11,

1713.04, and 1713.25 of the city of Hamilton Codified Ordinances, we find no error in the trial court's decision.

Negligence Per Se: Cox Maintenance

{¶ 53} Continuing, as it relates Cox Maintenance, Capella argues Cox Maintenance was not entitled to receive summary judgment on her claim alleging negligence per se because the evidence, when viewed in a light most favorable to her, creates a question of material fact as to whether Cox Maintenance violated R.C. 5321.04(A)(1), (A)(2), and (A)(3) of the Ohio Landlord Tenant Act, Chapter 4101:1-32-01, Section 3201.4 of the Ohio Basic Building Code as provided within the Ohio Administrative Code, and Sections 521.11, 1713.04, and 1713.25 of the city of Hamilton's Codified Ordinances. We find no merit to Capella's claim.

*Ohio's Basic Building Code and the City of Hamilton's Codified Ordinances*

{¶ 54} Capella initially argues a question of material fact exists as to whether Cox Maintenance violated Chapter 4101:1-32-01, Section 3201.4 of the Ohio Basic Building Code as provided within the Ohio Administrative Code and Sections 521.11, 1713.04, and 1713.25 of the city of Hamilton Codified Ordinances. These provisions, however, apply only to the installation and maintenance of gutters, downspouts, and draining systems. It is undisputed that Cox Maintenance was hired by Hamilton SID to remove snow and ice from public sidewalks in downtown Hamilton as is oftentimes necessary during the cold winter months in Ohio. Cox Maintenance, therefore, cannot be said to have violated either Chapter 4101:1-32-01, Section 3201.4 of the Ohio Basic Building Code as provided within the Ohio Administrative Code or Sections 521.11, 1713.04, and 1713.25 of the city of Hamilton Codified Ordinances.

{¶ 55} In so holding, as we have already twice stated, we again note that Cappella did not provide any evidence the drainage system and downspouts attached to the

Mercantile Lofts apartment building were broken or otherwise violated the Ohio Basic Building Code, nor did Capella provide any evidence that any of the gutters, downspouts, or drains attached to the apartment building were stopped, obstructed, or out of repair, or that the apartment building's drainage system did not otherwise properly drain. Accordingly, as it relates to Capella's claims alleging Cox Maintenance violated Chapter 4101:1-32-01, Section 3201.4 of the Ohio Basic Building Code as provided within the Ohio Administrative Code and violated Sections 521.11, 1713.04, and 1713.25 of the city of Hamilton Codified Ordinances, we find no error in the trial court's decision.

*Ohio's Landlord Tenant Act*

{¶ 56} Capella also argues a question of material fact exists as to whether Cox Maintenance violated R.C. 5321.04(A)(1), (A)(2), and (A)(3) of the Ohio Landlord Tenant Act. However, just as the name implies, these statutes are only applicable to parties properly engaged in a landlord-tenant relationship. In this case, the record is clear that Capella's landlord was Historic Developers as the owner, operator, and manager of the Mercantile Lofts apartment building. In turn, because there is nothing in the record to indicate Cox Maintenance was Capella's landlord, an agent of Capella's landlord, or in any way a party to Capella's lease with Historic Developers, Cox Maintenance cannot be held liable under the Ohio Landlord Tenant Act. Therefore, as it relates to Capella's negligence per se claim alleging Cox Maintenance violated R.C. 5321.04(A)(1), (A)(2), and (A)(3) of the Ohio Landlord Tenant Act, we find no error in the trial court's decision.

Negligence Per Se: Hamilton SID

{¶ 57} Finally, as it relates to Hamilton SID, Capella argues a question of material fact exists as to whether Hamilton SID violated R.C. 5321.04(A)(1), (A)(2), and (A)(3) of the Ohio Landlord Tenant Act. However, as noted previously, these statutes are only applicable to parties properly engaged in a landlord-tenant relationship. Again, the record is clear that

Capella's landlord was Historic Developers as the owner, operator, and manager of the Mercantile Lofts apartment building. In turn, just as with Cox Maintenance, because there is nothing in the record to indicate Hamilton SID was Capella's landlord, an agent of Capella's landlord, or in any way a party to Capella's lease with Historic Developers, Hamilton SID cannot be held liable under the Ohio Landlord Tenant Act. Therefore, as it relates to Capella's negligence per se claim alleging Hamilton SID violated R.C. 5321.04(A)(1), (A)(2), and (A)(3) of the Ohio Landlord Tenant Act, we find no error in the trial court's decision.

<u>The Principles of Common Law Negligence</u>

**{¶ 58}** Generally, in order to avoid summary judgment in a common law negligence action, the plaintiff must show (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. The plaintiff's failure to prove any of these elements would be fatal to his or her claim of negligence. *Whiting v. Ohio Dept. of Mental Health*, 141 Ohio App.3d 198, 202 (10th Dist.2001). As a result, "[t]he existence of a duty is fundamental to establishing actionable negligence, without which there is no legal liability." *Adelman v. Timman*, 117 Ohio App.3d 544, 549 (8th Dist.1996). Determination of whether a duty exists is a question of law for the court to decide, and therefore, is a suitable basis for summary judgment. *Galinari v. Koop*, 12th Dist. Clermont No. CA2006-10-086, 2007-Ohio-4540, ¶ 10.

*Common Law Negligence and the Open and Obvious Doctrine*

**{¶ 59}** As noted above, in addition to her negligence per se claim, Capella also argues the trial court erred by granting summary judgment to appellees on her common law negligence claim. However, before addressing the merits of this claim, we find it necessary to specifically state that we disagree with Capella's assertion that Coon Restoration,

Hamilton SID, and Cox Maintenance were agents of Historic Developers, Capella's landlord and the owner, operator, and manager of the Mercantile Lofts apartment building at the time of her fall. As a result, we question Capella's claim that Coon Restoration, Hamilton SID, or Cox Maintenance owed her a duty at the time of her fall. This is because, as stated previously, Capella did not provide any evidence that any of the gutters, downspouts, or drains attached to the Mercantile Lofts apartment building were stopped, obstructed, or out of repair, nor did Capella provide any evidence that the Mercantile Lofts apartment building's drainage system did not properly drain.

{¶ 60} That said, after a thorough review of the record properly before this court, we find the only conceivable common law negligence claim against Coon Restoration, Hamilton SID, or Cox Maintenance that Capella could maintain would be that Hamilton SID, through its agent Cox Maintenance, breached a duty when it failed to use a reasonable standard of care in treating the water and ice upon which Capella fell. However, although Capella claims otherwise, the record properly before this court is devoid of any evidence that Hamilton SID, or its agent Cox Maintenance, did anything other than apply a large amount of salt to the public sidewalk surrounding the Mercantile Lofts apartment building in an attempt to eliminate the ice in question. As a result, aside from alleging the amount of salt used was insufficient to completely melt the ice, there is nothing in the record indicating Hamilton SID or Cox Maintenance did anything to create a dangerous or unnatural accumulation of water and ice upon which Capella fell.

{¶ 61} In so holding, we note that even if the amount of salt applied to the ice in question was insufficient to completely melt the ice, as the Ohio Supreme Court stated over a century ago in *Norwalk v. Tuttle*, 73 Ohio St. 242, 245 (1906):

> In a climate where the winter brings frequently recurring storms of snow and rain and sudden and extreme changes in temperature, these dangerous conditions appear with a

frequency and suddenness which defy prevention and, usually, correction. * * * It is within common observation that without the presence of snow or rain, from the mere alternations of heat and cold operating upon the frozen earth beneath the walk, there result dangerous conditions of pavements which it would not be possible to prevent or correct. To hold that a liability results from these actions of the elements would be the affirmance of a duty which it would often be impossible, and ordinarily impracticable * * * to perform.

Therefore, based on the fact and circumstances here, we find the trial court's decision to grant summary judgment to Coon Restoration, Hamilton SID, and Cox Maintenance on Capella's claims alleging common law negligence was proper.

{¶ 62} The same can be said for Capella's claim alleging common law negligence against Historic Developers. As the trial court properly determined, based on Capella's own deposition testimony, it is clear that "slipping and falling under such circumstances [was] so obvious that even if Historic Developers knew about the condition of the sidewalk, it was not obligated to take any action on Capella's behalf." Again, this is true regardless of whether the ice upon which Capella fell was a natural or unnatural accumulation since the water and ice in question was, as the trial court stated, "typical of winter conditions in Ohio and not any more severe than wintery conditions in other locations in this geographical area."

{¶ 63} We agree with the trial court's decision. As this court has stated previously, "snow and ice are a part of wintertime life in Ohio and hazardous winter weather conditions and their attendant dangers are to be expected in this part of the country." *Mayes v. Boymel,* 12th Dist. Butler No. CA2002-03-051, 2002-Ohio-4993, ¶ 14. This court has further noted that a "reasonable person living in Ohio should be aware that in the wintertime a wet and slippery condition can quickly become an icy and potentially dangerous condition." *Id.* That is certainly the case here when considering Capella specifically testified during her deposition that she grew up in the southwestern Ohio area, and therefore, was well aware

that during the winter months water on a public sidewalk could transform into ice.

{¶ 64} While Capella believed she was merely walking through water rather than on ice, because there is no dispute that Capella knew the public sidewalk upon which she chose to walk was wet, nor any dispute that Capella was well aware that water on a public sidewalk could transform into ice during the winter months in Ohio, such mistaken belief does not invalidate the fact that the water and ice upon which she fell was open and obvious. *Base-Smith v. Lautrec, Ltd.*, 12th Dist. Butler No. CA2013-07-115, 2014-Ohio-349, ¶ 17. Accordingly, just as the trial court's decision to grant summary judgment to Coon Restoration, Hamilton SID, and Cox Maintenance, the trial court's decision to grant summary judgment to Historic Developers on Capella's common law negligence claim was proper.

## Conclusion

{¶ 65} In light of the foregoing, having found no merit to any of the claims raised by Capella within her four assignments of error, Capella's four assignments of error are overruled and the trial court's decision to grant summary judgment to Historic Developers, Coon Restoration, Hamilton SID, and Cox Maintenance is affirmed.

{¶ 66} Judgment affirmed.

HENDRICKSON, P.J., concurs.

RINGLAND, J., concurs in part and dissents in part.

**RINGLAND, J., concurring in part and dissenting in part.**

{¶ 67} Though the actions or omissions of Historic Developers do not amount to negligence per se, reasonable minds could differ as to whether, under the circumstances, there is negligence liability. Therefore, I would find the trial court erred by granting summary

judgment in favor of Historic Developers.

{¶ 68} This case presents another example of a plaintiff prohibited from presenting a lawful negligence case to a trier of fact for factual determinations. Ohio courts recognize two exceptions to the "no-duty" winter rule. *Luft v. Ravemor*, Inc., 10th Dist. Franklin No. 11AP-16, 2011-Ohio-6765, ¶ 14. The first exception regards the "unnatural" accumulation of ice and snow, while the latter regards the "improper" accumulation. *Id.* at ¶ 15. Under the unnatural accumulation exception, liability may attach when an owner or occupier either *permits* or creates unnatural accumulations of ice and snow. *Id.* (Emphasis added.)

{¶ 69} In the present case, Capella slipped on ice that had formed on the sidewalk in front of her apartment building. The ice was concealed by water that had formed overtop. Following the fall, Capella informed her landlord's leasing agent of the problem. In her deposition, the leasing agent testified that she sent an email to the owners of the building candidly stating "*[a]s you know* our building downspout drains onto the back Market Street sidewalk and it was frozen solid on the sidewalk when she fell." (Emphasis added.)

{¶ 70} The awareness of the problem, i.e., the unnatural accumulation of ice, presents a factual issue subject to reasonable dispute. Of course, the climate in Ohio brings rain, snow, and ice. Not every accident involves a negligent party. However, when a landlord is aware of a condition on the property that poses an enhanced risk of injury to invitees and permits that condition to exist, there should be some measure of accountability.

{¶ 71} This case represents another example of the "Catch-22" that plaintiffs face in slip and fall cases. *See, e.g., Roberts v. United Dairy Farmers, Inc.*, 12th Dist. Butler No. CA2014-03-066, 2014-Ohio-3881, ¶ 21 (Piper, J., dissenting). On one hand, the law allows a landowner to escape liability if there is no notice of the defect. On the other, the law allows a landowner to escape liability if the condition is visible to a party, often only after the fact. In other words " [t]here is no duty if the hazard is visible, yet no duty if the hazard is

invisible." *Id.* Coupled with the email acknowledging the known problem, the outcome of this case is made all the more confounding.

{¶ 72} Because the decision to affirm summary judgment does not allow the disputed issues to be resolved by a trier of fact, I must respectfully dissent.